STATE *ex rel.* BOARD OF EDUCATION OF OKLAHOMA CITY v. WEST, *Atty. Gen.*

No. 2734. Opinion Filed September 26, 1911.

Rehearing Denied October 17, 1911.

(118 Pac. 146.)

1. JUDGMENT—Conclusiveness—Funding Bonds—Validity of Issue. Where the district court has determined the validity of the warrant indebtedness of a school board under the refunding proceedings provided for by law, and has decreed that the funding bonds sought to be issued are valid and issued in strict conformity with said funding law, and no objections or exceptions are made to such determination and decree and no appeal taken therefrom, the decree and judgment is final and conclusive.

2. COUNTIES—Bonds — Constitutional and Statutory Provisions. There is no repugnancy between article 3, c. 7, Sess. Laws 1905,

504 SUPREME COURT OF OKLAHOMA.

State ex rel. Board of Education of Oklahoma City v. West, Atty. Gen.

entitled, ''An Act to enable counties, municipal corporations, the boards of education of any city or school district, to refund their indebtedness,'' and section 26, art. 10, Constitution, which provides: ''No county, city, town, township, school district, or other political corporation or subdivision of the state, shall be allowed to become indebted, in any manner, for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness: Provided, that any county, city, town township, school district, or other political corporation, or subdivision of the state, incurring any indebtedness requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty-five years from the time of contracting the same.''

3. **MUNICIPAL CORPORATIONS—Bonds—Limitation of Amount.** Funding bonds are issued concurrently with the cancellation of warrants of the municipality, and a municipality does not by their issue become further indebted, provided the warrants themselves represent a valid indebtedness. No new debt is incurred by a mere change in the form of the existing debt.

(Syllabus by the Court.)

*Error from District Court, Logan County; A. H. Huston, Judge.*

Application by the State, on the relation of the Board of Education of Oklahoma City, for a peremptory writ of mandamus to Charles West, Attorney General, and *Ex Officio* Bond Commissioner. Judgment for defendant, and the State brings error. Reversed and remanded.

*Flynn, Ames & Chambers, Shartel, Keaton & Wells, John F. Dillon, John C. Thomson, George S. Clay,* and *Storey, Thorndike, Palmer & Dodge,* for the State.

*Charles West,* Atty. Gen., and *W. C. Reeves,* Asst. Atty. Gen., for defendant in error.

KANE, J. The plaintiff in error, plaintiff below, filed its motion in the district court of Logan county, praying that a per-

emptory writ of mandamus issue against the defendant in error, Charles West, Attorney General and *ex officio* bond commissioner of the state of Oklahoma, directing him to approve a proposed issue of funding bonds of the board of education of the city of Oklahoma City, and to execute the certificate on the back of each of said bonds, as provided by law, and to do and perform all acts and things in the premises as by law required. The duty which the petitioner seeks to enforce is that imposed upon the Attorney General as *ex officio* bond commissioner by chapter 94 of the Session Laws of 1910, entitled, "An act for the protection, validation and sale of bond issues of the state, counties, townships and municipalities and all other political organizations and subdivisions of the state of Oklahoma." The court below denied the motion of the petitioner, and this proceeding in error was commenced to review that judgment. The proposed bonds were issued by the board of education of the city of Oklahoma City, under article 3, c. 7, Sess. Laws 1905 (article 7, c. 8, Comp. Laws Okla. 1909), for the purpose of funding warrants previously issued by said board to the amount of $200,000. The purpose of the issue and the authority pursuant to which it is sought to be made is fully set out in the recital contained in the bonds submitted to the Attorney General for his approval, as follows:

"This bond is issued by said board of education for the purpose of funding and paying a like amount of the legal, binding, outstanding and matured indebtedness of said board of education heretofore incurred and now existing and unpaid, evidenced by warrants regularly and lawfully issued, and is issued pursuant to a resolution duly passed by the said board of education, and to the judgment, order and finding of the district court of the Thirteenth judicial district in and for the county of Oklahoma, in the state of Oklahoma, made and entered and of record herein, and by virtue and under authority of and in all respects pursuant to and in full accordance with the provisions of an act of the legislative assembly of the territory of Oklahoma, entitled, 'An act to enable counties, municipal corporations, the boards of education of any city or school districts, to refund their indebtedness,' approved March 11, 1905 (being article 3 of chapter 7 of the Session Laws of Oklahoma Territory of 1905), and extended and put in force in the state of Oklahoma by the pro-

visions of section 2, of the Schedule of the Constitution thereof."

There seems to be no question as to the regularity of the refunding proceedings under the act of 1905, but the Attorney General bases his refusal to approve the proposed bond issue upon the ground that that act, if extended to and put in force at all by section 2 of the Schedule to the Constitution, must be held to be modified by the law creating the office of bond commissioner to the extent of authorizing the Attorney General to examine the refunding proceedings and reject the issue if in his opinion any part of the indebtedness sought to be refunded is illegal, notwithstanding the district court may have judicially found to the contrary. This position cannot be sustained. Section 1 of chapter 94, *supra*, provides that "the Attorney General is hereby made *ex officio* bond commissioner," and section 2 provides that "it shall be the duty of such bond commissioner to prepare uniform forms and prescribe a method of procedure under the laws of the state in all cases where it is desired to issue public securities or bonds, in any county, township, municipal or political or other subdivisions thereof of the state of Oklahoma; and it shall be the further duty of said bond commissioner to examine into and pass upon any security so issued, and such security, when declared by the certificate of said bond commissioner to be issued in accordance with the forms of procedure so provided shall be incontestible in any court in the state of Oklahoma unless suit thereon shall be brought in a court having jurisdiction of the same within thirty days from the date of the approval of said securities by the bond commissioner."

Under this statute which defines the powers of the bond commissioner, the duties of the Attorney General are entirely executive or administrative. The uniform forms and methods of procedure which he is authorized to prescribe are such as are permitted under the laws of the state, and, if any conflict arises between these laws and the forms and methods of procedure prescribed, the latter must yield. The Attorney General may ascertain whether statutory authority exists for the issuance of

the bonds, whether the essential facts exist upon which the exercise of such statutory authority may be conditioned, and whether the forms and methods of procedure prescribed by the Constitution and statutes have been complied with. These matters he is required to investigate and determine in advance of any controversy in the courts, and before the municipalities of the state have issued their bonds to purchasers, creditors, and others. The law prescribing such duty is not repugnant to a prior law which requires some of the matters which the bond commissioner is required to inquire into to be passed upon judicially before said bonds are submitted to him. The act under which the bonds were issued expressly provides for a proceeding in court against all the parties who may be prejudicially affected by the issue of the bonds to obtain a judicial determination and judgment as to the validity and regularity of the indebtedness to be funded, which judgment constitutes a final and conclusive basis for further action by any public official whose acts are essential to the validity of the bonds. Section 2 provides for giving notice of the application, and expressly provides that any person interested may remonstrate against the issuance of the same. Section 3 provides that the bonds cannot be delivered until after the expiration of the time for taking an appeal, and further expressly provides that appeals from the judgment of the court shall be allowed as provided by law, and, if an appeal be taken, the bonds cannot be delivered to the treasurer of the municipality until the final determination of the appeal. Every step essential to a contested litigation is provided. The parties to that litigation are the officers of the district or municipality who seek to exercise the power to issue the bonds on the one hand, and the taxpayers and inhabitants of the municipality on the other. The inhabitants and taxpayers are the members of the corporation, the officers are the duly chosen official representatives of the corporation, and the corporation itself is but an instrumentality of the state for the transaction of public business. When a judgment in such a proceeding is rendered, it necessarily binds and concludes all these. The hearing is had before the court which

exercises the judicial authority of the state, and the judgment rendered in the proceeding is a judgment by the state that its instrumentality and the chosen officers and representatives thereof are acting according to law, and that the warrant indebtedness sought to be funded is valid; that the bonds proposed to be issued, signed, and attested by the court are the valid and binding obligations of the municipality; and that they are issued with the final sanction of a judgment of a competent court which has decided every question in relation to their validity.

By the act making the Attorney General *ex officio* bond commissioner of the state, it was not intended to give him any power to revise or review a judgment thus solemnly entered; nor was it intended to supersede the provisions of the act of 1905, and to interpolate into the judgment or decree of the district court in the bonding proceeding a reservation or qualification that, although such judgment might be *res judicata* and final and binding, still the Attorney General may revise it, and examine into the correctness of the decision of the court. Under the construction of the act of 1910 contended for by the Attorney General, a bonding proceeding under the act of 1905 which had been affirmed by the Supreme Court on appeal would still have to be presented to the Attorney General for his rejection or approval. If an appeal had been taken from the decree or judgment of the district court and had been affirmed by the Supreme Court, the Attorney General, under his construction, could still review the correctness of the decision of the district and Supreme Courts, or refuse to follow it, or treat it as not conclusive of the validity of the refunding issue. The case as it stands is in no different situation. A judgment not appealed from has exactly the same effect as a judgment which has been affirmed on appeal. It is the opinion of the court that the decision of the district court validating the warrants and authorizing the funding and signing the funding bonds remaining unappealed from concludes the question as to the validity of the refunding issue, and forecloses the Attorney General from reversing the judgment thus solemnly reached. *Territory v. Hopkins,* 9 Okla. 133, 59 Pac. 976; *Board*

*of Commissioners of Day County v. State of Kansas,* 19 Okla. 375, 91 Pac. 699. Criticising the foregoing authorities, counsel for the Attorney General in their brief say:

"But these cases pertained to warrants issued and converted into bonds prior to the admission of Oklahoma into the Union, and there was no law in force in Oklahoma Territory which corresponded to that portion of section 26 of article 10 of the Constitution, which prohibits a municipality from becoming indebted in any manner for any purpose to an amount exceeding in any year, the income and revenue provided for such year without a vote by the people."

There is no inconsistency between the Statutes of 1905 and section 26, art. 10, of the Constitution. It is true that section 26 limits the indebtedness which may be legally created without a popular vote, but it has no bearing on proceedings for the refunding of an indebtedness once legally created, except in so far as it lays down the rule that the court must follow in determining whether the original indebtedness was legally created. Funding bonds are issued concurrently with the cancellation of warrants of the municipality, and a municipality does not by their issue become further indebted, provided the warrants themselves represent a valid indebtedness. No new debt is incurred by a mere change in the form of the existing debt. *In re Menefee,* 22 Okla. 365, 97 Pac. 1014. Mr. Chief Justice Williams, who prepared the opinion in the Menefee case, *supra,* said:

"The question further arises as to whether or not the issuing of the funding bonds created a debt. * * * It has frequently been held that, where bonds have been issued for the express purpose of liquidating an outstanding indebtedness, such bonds neither created nor increased the public debt, but simply changed its form."

In support of this proposition many authorities are cited.

The judgment of the court below is reversed, and the case remanded, with directions to award the peremptory writ prayed for.

All the Justices concur.