**EATON, County Treas., v. ST. LOUIS- S. F. R. CO.**

No. 15203—Opinion Filed Sept. 15, 1925.

Rehearing Denied Jan. 18, 1927.

(Syllabus.)

**1. Municipal Corporations — Constitutional Limitation on Indebtedness.**

The provisions in section 26, art. 10, of the Constitution, that "No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness," place two distinct and emphatic limitations upon the debt incurring powers of the state and municipalities thereof, to wit:

1st. That neither the state nor any municipal subdivision shall be allowed to become indebted in any manner, for any purpose, in any year beyond the revenue provided for that year, without the assent of three-fifths of the voters.

2nd. Nor in cases requiring such assent shall any indebtedness be allowed to be incurred in excess of five per cent. of the value of the property therein, as determined by the last assessment previous to the incurring of such indebtedness.

The foregoing limitations extend to the people, as well as to their fiscal and tax levying agents, and constitute a binding agreement and compact entered into by the people, that no debt shall be allowed to be incurred in excess of the limit fixed by the Constitution.

**2. Same — Refunding Bonds—Construction of Statute.**

Section 4272, Comp. St. 1921, in authorizing the refunding of outstanding warrants, debts, judgments, and obligations, and the issuance of refunding bonds in lieu thereof, is not repugnant to section 26, art. 10, of the Constitution, as it contemplates that all such warrants, debts, judgments, and obligations must be such as are authorized by law to be incurred and must be also within the constitutional limitation upon incurring indebtedness.

**3. Same—Validity of Bonds—Requisites.**

If valid debts have been incurred within the limit fixed by section 26, art. 10, of the Constitution, such debts may be refunded without increasing the existing indebtedness, provided such refunding bonds, when added to the then outstanding valid indebtedness, do not exceed in the aggregate the limit fixed by the Constitution.

**4. Same — Essential Municipal Expenses— Priority.**

In order to give effect to the provisions of the Constitution, authorizing the payment of salaries and other essential expenses of government, and at the same time observe the limitations provided in section 26, art. 10, upon incurring indebtedness, it is necessary that provision be made, first, for the essential expenses of government, and if any margin is left after making such provision, we may then indulge in conveniences and luxuries up to the limit fixed by section 26, art. 10.

**5. Judgment — Invalidity on Face — Judgment Approving Refunding Bonds.**

A judgment void for lack of jurisdiction apparent on its face is a nullity and binds no one.

Where a judgment purports to give validity to a refunding bond issue in the face of public records, which show that at the time of such purported judgment and bond issue the outstanding indebtedness already exceeded the constitutional limit, such judgment is void on its face, and such bonds are invalid.

**6. Municipal Corporations—Limitations on Powers—Notice.**

Purchasers of municipal bonds and all parties dealing with a municipality are charged with knowledge of the authority

and limitations upon the powers of such municipality.

### 7. Taxation—Recovery for Taxes Paid Under Protest—Interest not Recoverable.

Section 9971, Comp. St. 1921, authorizes an action for the recovery of illegal taxes paid under protest, and where a party brings himself within the provisions of such statute and shows such taxes to be illegal under the Constitution and statute, he is entitled to recover the amount paid under protest. Such section does not provide for interest on the amount paid under protest, nor authorize judgment for interest on such amount.

Error from District Court. Alfalfa County; James B. Cullison, Judge.

Action by the St. Louis-San Francisco Railway Company against H. B. Eaton, County Treasurer of Alfalfa County. Judgment for plaintiff, and defendant appealed. Affirmed, as modified.

Geo. F. Short, Atty. Gen., Randell S. Cobb, Asst. Atty. Gen., and J. Wilford Hill, Co. Atty., for plaintiff in error.

W. F. Evans and Stuart, Sharp & Cruce, for defendant in error.

HARRISON, J. This was an action by the defendant in error to recover certain taxes which had been paid under protest, the taxes in question having been levied for the purpose of creating a sinking fund and paying the interest on certain outstanding school district bonds amounting to $13,500, and alleged to have been issued in excess of the limitations imposed by the Constitution and by statute against incurring indebtedness. The bonds in question appear to have been issued in lieu of a judgment, or for the purpose of refunding a judgment, which had previously been rendered by the district court against the school district for outstanding indebtedness.

While the record herein does not affirmatively show that such bonds were in fact issued pursuant to a judgment and for the purpose of refunding such judgment, yet, as such a judgment is referred to as a fact in plaintiff in error's brief, and not disputed by defendant in error, we will assume that there was such a judgment and that the bonds in question were issued for the purpose of refunding same.

The trial court, in the case at bar, evidently upon the theory that such former judgment was void on its face, held the bonds to be void because they were in excess of the constitutional limit. The facts agreed upon and submitted to the trial court as a basis for its judgment are as follows:

"It is further agreed that H. B. Eaton was the duly qualified and acting county treasurer for Alfalfa county, Oklahoma, for the fiscal year 1921. It is further stipulated and agreed that a levy of 1.4 mills was made against the property of the plaintiff for the benefit of the sinking fund of school district No. 77. The assessed valuation of plaintiff's property in said school district was $124,700. Said 1.4 mills for sinking fund was levied for the purpose of paying the interest and principal of a funding bond issue dated January 25, 1921, of $13,500. Said funding bonds having been issued to pay off outstanding judgment indebtedness then existing against said school district. That prior to said date, to wit, January 25, 1921, the total bonded indebtedness of said school district was $72,000 and the total bonded indebtedness, including said issue on that date, amounted to $85,500. The total value of all property in said taxing jurisdiction amounts to $1,485,682, and 5 per cent. thereof equals $71,784. The 1.4 mill levy which plaintiff claims to be illegal, when applied to its property produces the sum of $174.48 as taxes.

"It is further stipulated and agreed that the plaintiff paid to the defendant, H. B. Eaton, county treasurer of Alfalfa county, Oklahoma, the full amount of taxes assessed against the property of said plaintiff in said county for said fiscal year, at the times both the first and second halves of said taxes became due and payable: and that at the time of the payment of said taxes, as aforesaid, plaintiff, as provided by law, delivered to the said county treasurer of said county its protest in writing against the payment and collection of said taxes, produced by said illegal and excessive levies; that said taxes were not paid voluntarily, but under protest: that said defendant was notified not to disburse said funds, and was advised that suit would be brought for the recovery thereof: that suit was brought for the recovery thereof, and service of summons had upon the defendant herein within thirty (30) days after said taxes were so paid under protest; that said plaintiff in every manner conformed to the provisions of the law, relative to the payment of taxes under protest and the institution of suit for the recovery thereof."

Upon the above state of facts the district court rendered judgment in favor of defendant in error for the amount of taxes paid under protest upon the levy made for the sinking fund and interest on the bond issue, and also gave judgment for the interest on the taxes thus paid under protest. The pertinent portion of the judgment is as follows:

"The seventh cause of action was submitted to the court upon an agreed statement of facts, and the court, having examined the same, and having heard the argu-

ments of counsel, and being well and sufficiently advised in the premises, finds that the allegations contained in plaintiff's petition are true, and that judgment should be rendered in favor of plaintiff in said cause of action in the sum or one hundred seventy-four dollars and fifty-eight cents ($174.58), as prayed for in said petition."

The county treasurer appeals to this court for review and reversal of such judgment.

The decisive question of law presented is whether, under section 26, art. 10, of the Constitution, and section 4272, Comp. St. 1921, the bond issue in question was void.

If such bond issue was void either under the Constitution or statute, then the judgment of the trial court should be affirmed, but if valid under both the Constitution and statute, then the judgment should be reversed; that is, the judgment as to the taxes paid under protest. As to the interest on amount paid under protest, and for which judgment was rendered, such question is determined by other provisions of statute and will be treated later on. The provision here involved of section 26, art. 10, of the Constitution is as follows:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness."

This section places two distinct and emphatic limitations upon the debt-incurring powers of the state and municipalities thereof, to wit: 1st. That neither the state nor any municipal subdivision shall be allowed to become indebted, in any manner, or for any purpose, in any year, beyond the revenue provided for that year, without the assent of three-fifths of the voters. 2nd. Nor in cases requiring such assent shall any indebtedness be allowed to be incurred in excess of 5 per cent. of the value of the property therein as determined by the last assessment previous to the incurring of such indebtedness. The second limitation is applicable to and controlling in the case at bar. The obvious purpose of this limitation is to prohibit the state and all municipal subdivisions thereof from incurring any indebtedness during any year in excess of five per centum of the assessed valuation of property for that year. Common reason will not dispute but that such was and is the definite, outstanding purpose of such provision, nor contend that language could more plainly and emphatically express such purpose. Were we called upon to specifically express just such a purpose in plain words, we could find none more specific and emphatic than the plain simple words of the Constitution, to wit:

" * * * Nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein. * * * "

These words express but one purpose and admit of but one interpretation. They simply say that **"no indebtedness shall be allowed to be incurred."** Similar constitutional provisions have been definitely passed upon by the Supreme Court of the United States in cases involving the identical question here involved and on each occasion such words have been interpreted to mean just what they say. See Buchanan v. Litchfield, 26 L. Ed. 138; Doon Twp. v. Cummins, 35 L. Ed. 1044.

In Buchanan, v. Litchfield, supra, Mr. Justice Harlan, dealing with a state of facts very similar to those presented here and with a section of the Illinois Constitution verbatim with ours, said:

"That section declares that 'No county, city, town, township, school district or other municipal corporation shall be allowed to become indebted in any manner or for any purpose, to an amount, including existing Indebtedness, in the aggregate, exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes previous to incurring such indebtedness.' * * *

"The words employed are too explicit to leave any doubt as to the object of the constitutional restriction upon municipal indebtedness. The purpose of its framers, beyond all question, was to withhold from the Legislative Department the power to confer upon municipal corporations authority to incur indebtedness in excess of a prescribed amount."

In Doon Twp. v. Cummins, supra, Mr. Justice Gray, dealing with a condition of facts identical with those presented here, and with a provision of the Iowa Constitution verbatim with the provision here involved, says:

"The scope and meaning of this pro-

vision of the fundamental and paramount law of the state are clear and unmistakable. No municipal corporation 'shall be allowed' to contract debts beyond the constitutional limit. When that limit has been reached, no debt can be contracted 'in any manner,' or for any purpose. The limit of the aggregate debt of the municipality is fixed at five per cent. of the value of the taxable property within it; and that value is to be ascertained 'by the last state and county tax lists,' which are public records, open to all, and of the contents of which all are bound to take notice. The prohibition is addressed to the Legislature, as well as to all municipal boards and, officers, and to the people, and forbids any and all of them to create, or to give binding force to, any debts of the corporation in excess of the limit prescribed. The prohibition extending to debts contracted 'in any manner,' 'or for any purpose,' it matters not whether they are in every sense new debts, or are debts contracted for the purpose of paying old ones. so long as the aggregate of all debts. old and new, outstanding at one time,.and on which the corporation is liable to be sued. exceeds the constitutional limit."

The statute under consideration, viz., section 4272, Comp. St. 1921, is as follows:

"When a refunding has been agreed upon. it shall be the duty of the proper officers to issue such bonds at the rate agreed upon, to the holder of such indebtedness, in the manner prescribed in this article; but no bonds shall be issued under this article until the proper evidence of the indebtedness for which the same are to be issued shall be delivered up for cancellation: Provided, that no bonded indebtedness shall be refunded by the board of county commissioners or any mayor and city council or any board of trustees of any town, township or any school district board, or board of education, under this article, except such as have been issued and outstanding at least two years at the time of such refunding; and Provided, further, that except for the refunding of outstanding debt, including outstanding bonds and matured coupons thereof, or judgments thereon, or warrants. no bonds of any class or description shall hereafter be issued where the total bonded indebtedness of said county, city, town, township, school district or board of education would thereby exceed five per cent. of the assessment for taxation as shown by the last finding and determination by the proper board of equalization for state and county purposes."

This section was section 5 of art. 3, chap. 7. S. L. 1905. which remained the law until revised by the Code Commission in the preparation of "Revised Laws 1910." so as to conform to the provisions of section 26. art. 10, of the Constitution. See section 366, R. L. 1910. Neither the Legislature nor the courts have ever regarded it as repug-

nant to the provisions of section 26, art. 10, of the Constitution, except that under the Organic Act of Oklahoma Territory, in view of which such statute was enacted, four per cent. was the limit of indebtedness, while under the Constitution five per cent. is the limit, and the section was revised by the Code Commission to conform to section 26, art. 10. of the Constitution, as will be seen in section 366. R. L. 1910.

Plaintiff in error in his brief contends that said section 4272 permits an indebtedness beyond the five per cent. limitation prescribed in section 26, art. 10, of the Constitution for the purpose of funding debts, coupons, judgments or warrants. He quotes the limiting provision of section 26, art. 10, of the Constitution, and then quotes the following portion of section 4272, Comp. St. 1921. to wit:

"Provided, further. that except for the refunding of outstanding debt, including outstanding bonds and mature coupons thereof. or judgments thereon, or warrants, no bonds of any class or description shall hereafter be issued where the total bonded indebtedness of said county, city, town, township, school district or board of education would thereby exceed five per cent. of the assessment for taxation as shown by the last finding and determination by the proper board of equalization for state and county purposes."

And then says:

"It must be noted that this statute specifically authorizes the funding of debts, evidenced by bonds, coupons, judgments or warrants in excess of five per cent. of the total assessed valuation of the municipality issuing the funding bonds."

He then cites the case of State ex rel. Bd. of Ed. of Oklahoma City v. West. 29 Okla. 503. 118 Pac. 146, in support of his contention. and to show also that there is no repugnancy nor inconsistency between section 4272 of the statutes and section 26, art. 10. of the Constitution, and quotes from the opinion in said case as follows:

"There is no inconsistency between the Statutes of 1905 and section 26. art. 10. of the Constitution. It is true that section 26 limits the indebtedness which may be legally created without a popular vote, but it has no bearing on proceedings for the refunding of an indebtedness once legally created, except in so far as it lays down the rule that the court must follow in determining whether the original indebtedness was legally created. Funding bonds are issued concurrently with the cancellation of warrants of the municipality, and a municipality does not by their issue become further indebted. provided the warrants themselves

represent a valid indebtedness. No new debt is incurred by a mere change in the form of the existing debt."

To the extent that this court has held that there is no repugnancy between the above section of the statute and foregoing section of the Constitution, the plaintiff in error's contention is sustained by the above authority, and is herein sustained for two reasons, viz.: 1st. Because there is no express intention on the part of the Legislature to put in force a statute repugnant to said section 26, art. 10, of the Constitution. 2nd. Because if the Legislature had so intended and had so provided by statute, then such statute would fall. The Legislature can neither by intent nor by inadvertence exceed the express limitations of the Constitution. In Doon Twp. v. Cummins, supra, the Supreme Court of the United States said:

"The prohibition is addressed to the Legislature, as well as to all municipal boards and officers, and to the people, and forbids any and all of them to create, or to give binding force to, any debts of the corporation in excess of the limit prescribed. * * *

"The power of the Legislature in this respect being restricted and controlled by the Constitution, any statute which purports to authorize a municipal corporation to contract debts in any manner or for any purpose whatever in excess of that limit is to that extent unconstitutional and void."

It is true as contended by plaintiff in error that in State ex rel. Board of Ed. Oklahoma City v. West, supra, this court held that there was no repugnancy between the above provisions of the statute and Constitution, but the obvious, the only sound basis for such holding is, such statute does not undertake to legalize an indebtedness beyond the five per cent. limit provided in the Constitution.

In the portion of the opinion above quoted it is plainly indicated that to give validity to funding bonds, issued for warrants, debts, or judgments, under the aforesaid section of the statute, such warrants, judgments, or indebtedness must themselves have been valid. If they represent a valid debt, a debt incurred within the constitutional limit, then the changing of the form does not create a new indebtedness nor increase the existing indebtedness, but merely changes the form of indebtedness, and it is plain from the above opinion and from the statute itself, that the debts for which bonds are issued must be valid debts in order to give validity to the funding bonds, which take their place. The Constitution does not permit a municipality to incur an unlawful indebtedness and then give validity to such indebtedness by placing it into a judgment and then issuing bonds in lieu thereof. The plain language of section 26, art. 10, to wit:

"Nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein "

—constitutes a stop line which cannot be legally crossed. Nor does the limitation thus provided confine a municipality to the mere issuance of bonds in excess of five per cent. of the assessable valuation of property, as was done in the case at bar, but extends to all kinds of indebtedness, and prohibits any indebtedness from being incurred in excess of such limitation. See Litchfield v. Ballou and Doon Twp. v. Cummins, supra. If a valid debt should be incurred by a municipality, either by contract or by warrants issued, or by a judgment rendered, then if such judgment, warrant, or contracted obligation be within the constitutional limit at the time, it may be refunded without increasing the existing valid indebtedness, as it merely changes the form of such indebtedness, the new form taking the place of the old, which must be surrendered and canceled.

Plaintiff in error contends, on the one hand, that the bonds in question do not increase the existing indebtedness, but merely take the place of a $13,500 judgment, thereby changing the form without increasing the amount of the indebtedness, and cites State ex rel. Bd. of Ed. Oklahoma City v. West, supra, and also Smartt v. Board of Co. Com., 67 Okla. 141, 169 Pac. 1101, and Hume v. Wyand, 68 Okla. 261, 173 Pac. 813, in support of such contention, but in effect plaintiff in error does not rely upon the theory that the bond issue in question was a mere change of form of a valid outstanding indebtedness, for, as will be seen from the above quotation from his brief, that, on the other hand, his main contention is that the statute specifically authorizes debts evidenced by bonds, coupons, judgments, or warrants to be incurred in excess of five per cent. of the total assessed valuation, and on page 8 of his brief further says:

"The question largely hinges upon the proposition of whether or not it is legally possible for a school district to be indebted in excess of five per cent. of its valuation."

Again, on page 10 of his brief, plaintiff in error says:

"So far as the record in this case is con-

cerned, these funding bonds may have been issued to pay indebtedness to which the limitation of section 26 would not apply."

He also submits some illustrations through which he seeks to create plausible grounds for exceeding the limit, and draws a distinction between "compulsory indebtedness" and "voluntary indebtedness," contending that so far as the record discloses this bond issue might possibly have been to take up a compulsory indebtedness, and cites Smartt v. Board of Co. Com. and Hume v. Wyand, supra, in support of his contention that what is denominated "compulsory indebtedness" was not contemplated by section 26, art. 10. of the Constitution; that the limitation therein extended only to "voluntary indebtedness" and did not extend to "compulsory indebtedness"; but this contention brings us back to the plain blunt language of the Constitution, to wit:

"Nor in cases requiring such assent shall any indebtedness be allowed to be incurred to an amount including existing indebtedness in the aggregate exceeding five per cent. of the valuation of the taxable property therein."

This language does not make any distinction between what is termed "voluntary indebtedness" and what is termed "compulsory indebtedness"; it just plainly says:

"Nor in cases requiring such assent shall any indebtedness be allowed to be incurred" —and as we view these plain words we do not feel permitted, by a juggling of language nor by resort to theories or illustration, to obscure their plain meaning nor to draw across the face of the Constitution a line of distinction, between "voluntary indebtedness" and "compulsory indebtedness" which is not authorized and which not only mutilates the face of the Constitution. but obliterates the stop line which the framers of the Constitution sought to maintain for the taxpayers' safety.

In City of Litchfield v. Ballou, 29 L. Ed. 132. the Supreme Court of the United States had under consideration a provision of the Constitution of the state of Illinois which is word for word with the provision of the Constitution here involved, and in passing upon the meaning of, and emphasizing the words **"indebted in any manner or for any purpose,"** said:

"It shall not become indebted; shall not incur any pecuniary liability: it shall not do this in any manner, neither by bonds. nor notes. nor by express or implied promises. Nor shall it be done for any purpose, no matter how urgent. how useful. how unanimous the wish. There stands the existing indebtedness to a given amount in re-

lation to the sources of payment as an impassable obstacle to the creation of any further debt in any manner or for any purpose whatever.

"If this prohibition is worth anything, it is as effectual against the implied as the express promise, and is as binding in a court o.' chancery as a court of law."

This language was approved and quoted by the Supreme Court of the United States in Doon Twp. v. Cummins, supra, in 1891, and was the settled interpretation of this constitutional provision at the time of the adoption of our Constitution.

The cases of Board of Education v. West, Smartt v. Board of Co. Com., and Hume v. Wyand, cited supra. do not deal with the limitation presented here, and therefore do not govern the question herein presented. Both these cases deal with a different limitation. In Board of Ed. v. West, the bonds which the board of education sought to mandamus the Attorney General to approve contained the following unchallenged recital, to wit:

"This bond is issued by said board of education for the purpose of funding and paying a like amount of the legal binding, outstanding and matured indebtedness of said board of education heretofore incurred and now existing and unpaid, evidenced by warrants regularly and lawfully issued."

These bonds were held valid under an unchallenged .record which showed on its face that they were issued for the purpose of taking up a valid outstanding indebtedness, evidenced by warrants regularly and lawfully issued, and the writ of mandamus compelling their approval was issued upon the theory that the bonds represented a valid indebtedness Paragraph 3 of the syllabus of said case is as follows:

"Funding bonds are issued concurrently with the cancellation of warrants of the municipality, and a municipality does not by their issue become further indebted. provided the warrants themselves represent a valid indebtedness. No new debt is incurred by a mere change in the form of the existing debt."

Smartt v. Board of Co. Com., supra, deals with a different provision of the Constitution to the one involved here. It deals with the first limitation in section 26, art. 10. to wit:

"No county, * * * school district. * * * shall be allowed to become indebted. in any manner. or for any purpose. to an amount exceeding in any year, the income and revenue provided for such year. without the assent of three-fifths of the voters thereof. * * *"

This case is in no sense more than merely

analogous to the question, here presented. It is in direct conflict with the settled definition given to those identical words by the Supreme Court of the United States in Litchfield v. Ballou, and Doon Twp. v. Cummins, supra, and the reasoning therein is too void of strength to constitute a binding analogy to the proposition here presented.

It is the second limitation which controls herein, and no process of theorizing can strip it of the plain meaning with which its language clothes it, to wit: "Nor in cases requiring such assent shall any indebtedness be allowed to be incurred." The meaning of these plain words cannot be obscured by any process of theorizing. Had it been intended that the five per cent. limit therein fixed could be reached by what is termed "voluntary indebtedness," such as is not essential to the maintenance of government, and then dump all of the essential obligatory expenses of government on top of that, how easy it would have been to have said so. Sound reason refutes such theory and impels the conclusion that, inasmuch as the Constitution and statutes have created certain offices and provided salaries and other expenses necessary to the exercise of sovereignty and maintenance of government, and in section 26, art. 10, provided that in cases requiring the assent of three-fifths of the voters no indebtedness shall be allowed to be incurred in excess of five per cent. of the property valuation, then in order to give effect to the entire Constitution and to all of its provisions we should provide, first, for all the obligatory expenses of government, "compulsory indebtedness," making reasonable allowance for contingent emergencies, and if, after this is done, any margin is left between the "necessary expenses" and the limit fixed in the Constitution, we may then indulge in a few nonessentials, conveniences, and luxuries. By this method we give effect to the entire Constitution and to all of its provisions relating to debts and expenses of government and still meet all the compulsory obligations of government; but to hold that the limit of indebtedness may be reached for luxuries or conveniences, nonessentials, "voluntary indebtedness," and then pile all of the necessary expenses of government, "compulsory indebtedness," on top of the limit, is to destroy the effect of section 26, art. 10, and thereby obliterate the one safeguard with which the people, in their adoption of the Constitution, have surrounded themselves against reckless expenditures and exorbitant taxation.

The words, "nor in cases requiring such assent shall any indebtedness be allowed to be incurred," etc., had been, given a definite and emphatic interpretation by the Supreme Court of the United States in Litchfield v. Ballou, and Doon Twp. v. Cummins, supra, many years previous to the adoption of such language as part of our organic law. And such provision, as was observed by the Supreme Court of the United States in the authorities above cited, is not only an emphatic limitation upon the Legislature and other tax-levying agencies of the state and its municipalities, but constitutes a solemn, binding agreement and compact among the people, which by its adoption was entered into by the people, by which they agreed and bound themselves, as well as their chosen representatives, that their property should not be taxed in any one year to pay any debt in excess of five per cent. of the assessed value of their property. They had an absolute right to enter into such agreement and make it a part of their organic law, and having done so, they have a right to demand that it be observed as a protection against confiscation of their property through excessive taxation.

In Hume v. Wyand, supra, the issue was the sufficiency of the petition. Hume, the plaintiff in error, instituted proceedings to enjoin the sale of a certain issue of municipal bonds. The trial court held that the petition did not state facts sufficient to constitute ground for relief and sustained a demurrer thereto, and this court affirmed such judgment, holding, in paragraph 3 of the syllabus, that:

"A petition, in a suit to enjoin the sale of refunding bonds, which merely states, in effect, that the indebtedness refunded was incurred in violation of section 26, art. 10, Williams' Constitution, and chapter 80 of the Laws of 1910-11, does not state facts sufficient to constitute a cause of action."

The basis of such holding is that the petition stated mere conclusions of law without alleging the facts. From the body of the opinion it appears that the test applied in determining the sufficiency of the petition was whether the indebtedness, for which the funding bonds were issued, exceeded the first limitation contained in section 26, art. 10, of the Constitution; that is, the limitation which requires the assent of three-fifths of the voters before the revenue provided for a given year can be exceeded, and is not controlling here for the same reasons that Smartt v. Board of Co. Com., supra, is not controlling.

The holding in Hume v. Wyand that "Where the district court has determined

the validity of the warrant indebtedness of a city of the first class under the refunding proceedings provided by law, and has decreed that the funding bonds sought to be issued are valid and issued in strict conformity with said funding law, and no objections or exceptions are made to such determination and decree and no appeal is taken therefrom, the decree and judgment is final and conclusive"

—seems to be based on the assumption that the judgment of the district court holding the indebtedness therein sought to be refunded to be valid was a judgment regular and valid on its face, and not having been appealed from, was binding. But such is not true in the case at bar. The judgment which purported to give validity to the bond issue here involved is not valid on its face, as appears from the agreed statement of facts above set out. It is agreed as shown by the facts above quoted that on the date of this bond issue, January 25, 1921, the total value of taxable property was $1,435,682, and that five per cent. thereof equalled $71,784, and further agreed that on said date the total outstanding indebtedness against said school district was then $72,000, and that the total bonded indebtedness, including such issue on said date, amouted to $85,500. These facts on their face show that the judgment, if there was a judgment against the school district for previously incurred debts and which purported to authorize and give validity to the $13,500 bond issue, was void on its face for want of authority under the law.

A judgment, void for want of power apparent on its face, binds no one. Roth v. Union Nat. Bank, 58 Okla. 605, 160 Pac. 505; Lee v. Tonsor, 62 Okla. 14, 161 Pac. 804; Winona Oil Co. v. Barnes, 83 Okla. 248, 200 Pac. 981; Title Guaranty Co. v. Foster, 84 Okla. 291, 203 Pac. 231; Black on Judgments (2nd Ed.) vol. 1, sec. 171; see, also, 15 R. C. L. pages 841-843, and authorities cited in section 316.

Hence, assuming that there was a judgment on which the validity of the $13,500 bond issue was predicated, such judgment was plainly void for lack of power apparent on its face Such judgment was rendered and the bond issue authorized in the face of the plain record, of which the court and all parties were charged with knowledge— Doon Twp. v. Cummins, supra—showing that, on the date of the issue, the constitutional limit of valid indebtedness was only $71,784, and that $72,000 of bonded indebtedness was then outstanding, and that the judgment and proposed bond issue would increase the outstanding debt to $85,500,

which was $13,500 in excess of the limit. These facts show on their face that necessarily, at some time previous to the purported judgment and bond issue, the fiscal agents of the school district had violated the law by incurring an indebtedness in excess of the constitutional limit; the court, therefore, was without power to give validity to all this outstanding indebtedness and could not give validity to the debts for which the bonds were issued without first adjudging some of the other outstanding indebtedness to be invalid, and its attempt to give validity to the entire debt, including the $13,500 bond issue, rendered the judgment void on its face.

So, when the facts heretofore set out were agreed to and submitted to the trial court as a basis for judgment in the instant case, the court, with the plain words of the Constitution on the one hand and these facts on the other, could not hold the entire indebtedness valid and, so far as the agreed facts disclose, the $13,500 bond issue being the last item of indebtedness, or representing the last items of indebtedness incurred by the district, he could not do otherwise than hold such bond issue invalid.

The bonds themselves being invalid, the tax levy for the payment of same was likewise invalid, and as defendant in error had brought itself clearly within the statutes for the recovery of illegal taxes paid under protest, and it appears from the agreed facts that it had done so, it was entitled to recover.

Plaintiff in error calls attention to article 6, ch. 25, C. S. 1921, which makes the Attorney General ex officio bond commissioner for the state, makes it his duty to approve and certify to the regularity of bond issues, and provides that upon his approval and certification a bond issue becomes incontestible, unless suit be brought within 30 days from the date of such approval, and contends that such bonds having been approved and certified by the Attorney General, and defendant in error not having contested the validity of same within the prescribed 30 days, is now barred from maintaining this action. This contention is answered, however, by the facts that these bonds are void for the reasons above given and for the further reason that section 9971, Comp. St. 1921, specially authorizes a suit for the recovery of illegal taxes paid under protest, and it is agreed in the stipulation of facts that the defendant in error was within its statutory rights in such case; hence the limit provided in chapter 25, Comp. St. 1921, for contesting a bond issue is not applicable.

Neither are the cases of City of Lawton v. Ayres, 40 Okla. 524, 139 Pac. 963, and City of Chickasha v. O'Brien, 58 Okla. 46, 159 Pac. 282, applicable to the question presented here.

It is contended by plaintiff in error that the holder of the bonds in question is a necessary party to a determination of the validity of such bonds. This contention cannot be sustained.

It is a settled doctrine of law that purchasers of municipal bonds and all parties dealing with a municipality are charged with a knowledge of the authority and limitations upon the powers of a municipality. City of Brenham v. German Am. Bank (U. S.) 36 L. Ed. 390; Nesbitt v. Independent Dist. of Riverside (U. S.) 36 L. Ed. 562; Buchanan v. Litchfield (U. S.) 26 L. Ed. 138; Doon Twp. v. Cummins (U. S.) 35 L. Ed. 1045; St. Lawrence Twp. v. Furman. 171 Fed. 400; Decker v. Stanfield, 34 Okla. 524, 126 Pac. 239; Martin v. Ter., 5 Okla. 188, 48 Pac. 106; Gardner v. S. D. 87, 34 Okla. 716, 126 Pac. 1018; Haskins & Sells v. Oklahoma City, 36 Okla. 57, 126 Pac. 204.

The remaining question deserving of notice is whether the trial court in the instant case erred in rendering judgment for interest on the taxes paid under protest.

The right to maintain this character of action is specifically given by section 9971, which is section 7 of subdivision b, chap. 107, art. 1, S. L. 1915, approved March 11, 1015. This section created and conferred a special right upon persons aggrieved by an illegal tax; it specifically provides the procedure for recovery of illegal taxes paid under protest and defines the rights of such parties. Parties availing themselves of the rights thus provided are limited to the rights therein given; the section does not provide for interest on the tax paid under protest; therefore the trial court erred in rendering judgment for interest on the amount paid under protest. With this exception, the judgment of the trial court is affirmed.

Wherefore it is the order of this court that the judgment of the trial court be modified to the extent of giving judgment in favor of defendant in error for the amount of taxes paid under protest without interest, and, as thus modified, the judgment is affirmed.

NICHOLSON, C. J., and MASON, PHELPS, LESTER, HUNT, CLARK, and RILEY, JJ., concur.

BRANSON, V. C. J. (dissenting). Failing to agree with the opinion of the court in this small but very important case, the writer feels impelled to submit briefly the propositions controlling, as he views them.

The case was submitted to the trial court upon a stipulation showing a prior outstanding bonded indebtedness of $72,000 and a subsequent funding bonded indebtedness of $13,500. Taken together, plaintiff contended they were in excess of the 5% limitation provided by section 26, art. 10, of the Constitution of the state. The said funding bond indebtedness is the bone of contention, the $72,000 of bonds having nothing to do with the issue except to confuse. But for the issuance of the funding bonds, long prior to this suit, the tax levy out of which this suit arose would never have been made.

The first proposition is that the district court of Alfalfa county had long since adjudged the warrant indebtedness out of which the funding bonds grew, to be valid. From this judgment of the district court no appeal was taken and it, therefore, became a finality. Under the uniform holdings of this court the said judgment ends the question of the validity of the indebtedness funded. State ex rel. Bd. of Ed. of Okla. City v. West, 29 Okla. 503, 118 Pac. 146; Smartt v. Board Co. Com'rs., 67 Okla. 141, 169 Pac. 1101; Hume v. Wyand, 68 Okla. 261, 173 Pac. 813.

The second proposition is that the issuance of bonds funding a prior valid indebtedness does not increase the indebtedness of the municipality. This was definitely held by this court in the case of State ex rel. Board of Education of Oklahoma City v. West, in which the court in the syllabus said:

"Funding bonds are issued concurrently with the cancellation of warrants of the municipality, and a municipality does not by their issuance, become further indebted provided the warrants themselves represent a valid indebtedness. No new debt is incurred by mere change in the form of the existing debt."

The third proposition is that the funding bond statute is valid and not in conflict with section 26, art. 10, of the Constitution. This was held in the cases above cited.

Since the validity of the funded indebtedness had become a final adjudication, and since the issuance of funding bond is not an increase of the indebtedness of the school district, but a mere change in form, and since the validity of the statute authorizing such substitution has already been determined, and since the said funding statute, among other provisions, requires that the tax-levying authorities provide a tax each year sufficient to pay the interest on the funding

bond and raise a sinking fund, all of these matters are out of the case against the plaintiff. The stipulation on which the case was tried to the lower court recites that to pay the interest on such funding bonds ($13,500) and to raise a sinking fund sufficient to pay the bonds at maturity, 1.4 mills levy was made. This on plaintiff's property amounted to the $174 sued for. There is nothing in the stipulation or elsewhere in the record to show that the plaintiff ever denied that said amount of levy was necessary for the purpose for which it was made, and nothing to show that a less levy would have paid the interest and provided the necessary sinking fund. The writer is, therefore, driven to the conclusion that, under the pleadings and the stipulation of facts, plaintiff could not recover any sum. The judgment of the lower court should be reversed, with direction to render judgment for defendant on the stipulation.

Note.—See under (1) 28 Cyc. pp. 1538, 1540. (2) 28 Cyc. p. 1541. (3) 28 Cyc. p. 1541. (4) 28 Cyc. p. 1541. (5) 33 C. J. pp. 1073, §34, 1077, §37. (6) 28 Cyc. pp. 670, 1621. (7) 37 Cyc. pp. 1184, 1190.