## CITY OF MADILL v. DABNEY, Atty. Gen.

No. 20453.   Opinion Filed March 4, 1930.

A. N. Murphy, City Atty., and Arden L. Bullock, for petitioner.

Edwin Dabney, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen., for respondent.

ANDREWS, J. This is an original proceeding in this court in which the city of Madill, Okla., seeks a writ of mandamus against the Attorney General of the state of Oklahoma, as the bond commissioner of the state of Oklahoma, to approve an issue of refunding bonds of the city of Madill, Okla. J. Berry King, Attorney General, has been substituted as a party defendant in place of Edwin Dabney, Attorney General, resigned. There is no dispute as to the facts.

The record shows that on June 1, 1907, the city of Madill, Okla., executed and issued its negotiable public utility coupon bonds in the aggregate sum of $40,000 dated June 1, 1907, bearing interest at the rate of 6 per cent. per annum, payable semi-annually and maturing June 1, 1927. Neither the regularity of those proceedings nor the legality of those bonds is attacked, and it is admitted that they evidenced a valid and binding obligation of the city of Madill. When those bonds matured they were presented for payment and payment was refused for the reason that there were no funds available to pay the same. On January 26, 1928, the United States District Court rendered a judgment on the bonds in favor of the holder of 13 of them and that judgment became final. The city of Madill paid all of the interest on the bonds and judgment up to June 1, 1928. On May 7, 1928, the city of Madill, by ordinance, entered into a contract with the American-First Trust Company of Oklahoma City, representing the owners and holders of the bonds and judgment, for a refunding of the indebtedness and the issuance of refunding bonds in lieu thereof. On July 7, 1928, the district court of Marshall county rendered judgment approving the issuance of the refunding bonds and indorsed its approval on each of them. Those refunding bonds are designated "Refunding Bonds of 1928." They are in the aggregate sum of $40,000, bear date of June 1, 1928, and bear interest at 5 per cent. per annum payable semi-annually. There is no question raised as to the legality of the refunding bond procedure or the form of the bonds, other than as hereinafter set forth. Those refunding bonds were certified to the Attorney General for his approval and he refused to approve the same.

An alternative writ of mandamus was issued to the Attorney General, and he assigns two reasons for his refusal to approve these bonds. The first reason assigned is that the city of Madill seeks to extend the debt evidenced by the former bonds beyond 25 years from their date without the assent of the voters of the city. It is contended that section 26, art. 10 of the Constitution of Oklahoma prohibits such an extension without the assent of the voters of the city. The Attorney General relies upon the language of this court in the case of Board of Education of the City of Oilton v. Short, Attorney General, 126 Okla. 70, 258 Pac. 815, wherein this court said:

"While, upon the other hand, it is contended by defendant that if the issuance of the refunding bonds in question is to be considered merely changing the form of an old debt, since the refunding bonds run for a period of 25 years from the date of their issue, that this is violative of the provisions of section 25, article 10, of the Constitution of Oklahoma, providing that all such debts must be paid within 25 years. In other words, if the issuance of the refunding bonds to run 25 years is the mere continuation of the old debt, already having run ten years, making a total period of 35 years the indebtedness would run, that the bonds are void as violative of the above-quoted provision of the Constitution. And, if the issuance of said refunding bonds is the creation of a new debt, running the total indebtedness of the district to above 5 per centum if its assessed valuation without a three-fifths vote of the people, that this is violative of the provisions of section 26 of article 10 of the Constitution."

An examination of that decision discloses that the language upon which the Attorney

General relies is a contention made by the defendant in that case and not the opinion of the court. The paragraph starts out by stating, " * * * it is contended by defendant, * * * " and the use of the word "that" throughout the remainder of the paragraph shows that the entire paragraph is a statement of the contention of the defendant therein and not a statement of law by the court.

This court could not well hold that the issuance of school bonds (there in question) is in violation of section 25, art. 10, of the Constitution, for the reason that that section refers to state indebtedness and has no reference to indebtedness of counties, cities, towns, townships, school districts, or other political corporations or subdivisions of the state, the limitations upon those subdivisions being contained in section 26, art. 10, of the Constitution. We could not well hold that the issuance of public utility bonds (here in question) would be in violation of section 26, art. 10, Id., for the reason that the issuance thereof is specifically authorized by section 27, art. 10, of the Constitution. The Oilton decision was based entirely upon the decision of this court in Eaton, Co. Treas., v. St. L. & S. F. Ry. Co., 122 Okla. 143, 251 Pac. 1032, and no other decision could have been reached. There the original indebtedness was $22,000 and the indebtedness sought to be refunded was $23,000. At the time of the attempted refunding, the outstanding indebtedness of the school district, including the $23,000 sought to be refunded, exceeded 5 per cent. of the assessed valuation of the school district. If the indebtedness sought to be refunded had not exceeded the amount of the original indebtedness, or if the indebtedness had consisted of public utility bonds, a different question would have been presented.

In the case at bar we are not dealing with a school district, which is limited by section 26, art. 10, supra, but with waterworks bonds of a city, which are authorized by section 27, art. 10, supra. The indebtedness sought to be refunded in this case is the original indebtedness, without any addition thereto. The indebtedness in this case was contracted prior to statehood, while in the Oilton Case the indebtedness sought to be refunded was contracted after statehood. That case is not an authority on the issues presented here.

Section 25 of the Schedule of the Constitution of Oklahoma authorizes any city in either of the territories that owes, at the time of the admission of the state into the

Union, any debt evidenced by warrant, script, or other evidence of indebtedness, through the proper officers thereof, to make provision for the payment of, and to pay, such indebtedness either by tax levies or by issuing bonds in lieu thereof, in accordance with and under the provisions of the laws extended in force in the state. It is therein provided:

"Provided, that the limitation upon the amount of indebtedness that may be created by any county, city, incorporated town, township, board of education, school district, or other municipality and upon the amount of taxes that may be levied by any county, city, incorporated town, township, board of education, school district, or other municipality, under the provisions of this Constitution, or of law, shall not apply to the indebtedness, the levying of taxes, and the issuing of bonds provided for herein." Section 25 of the Schedule to the Constitution of Oklahoma.

Under that provision the constitutional limitations upon the levying of taxes and the issuing of bonds do not apply to the levying of taxes and the issuing of bonds for the payment or extension of indebtedness of a city owing at the time of the admission of the state into the Union.

The city of Madill became indebted on the 1st day of June, 1907, to the amount of $40,000, and that indebtedness was evidenced by its waterworks bonds of that date. That indebtedness, admitted to be valid, remained an indebtedness after the admission of the state into the Union, and that indebtedness, under the provisions of section 25 of the Schedule to the Constitution, may be paid by the levying of taxes or may be extended by the issuance of funding bonds without regard to any limitations in the Constitution.

Section 26, art. 10, of the Constitution cannot be given the construction contended for by the respondent. There is nothing therein that prohibits the refunding of indebtedness not paid at maturity. The provision in that section that the municipality incurring the indebtedness shall provide for the collection of an annual tax for the payment of the interest and principal within 25 years from the date of the contracting thereof is in no wise a limitation upon the rights of the holder of the indebtedness, and if, at maturity, the municipality has no funds with which to pay the indebtedness, the indebtedness is not canceled or voided, and if, at any time, the existing valid indebtedness is sought to be funded by the municipality, the fact that the municipality was

required to pay the indebtedness within 25 years will not prevent the funding thereof. The Attorney General contends that the funding thereof could only be with the assent of the voters of the municipality, but there is no provision in our Constitution dealing with refunding bonds. The funding of an indebtedness does not create an indebtedness, but merely changes the form of the indebtedness, the new form taking the place of the old, which must be surrendered and canceled. Eaton v. St. Louis & S. F. Ry. Co., supra, and cases cited therein. As was pointed out in State ex rel. Board of Education v. West, 29 Okla. 503, 118 Pac. 146, there is no inconsistency in section 26, art. 10, supra, and our refunding bond procedure.

The second reason for the Attorney General refusing to approve the bonds is that the evidence of indebtedness sought to be refunded was not surrendered and canceled in open court at the time the refunding bonds were approved and signed by the district judge. He contends that, under the provisions of section 4272, C. O. S. 1921, no bonds shall be issued until the proper evidence of the indebtedness for which the same are to be issued shall be delivered up for cancellation, and that, under the provisions of section 4280, C. O. S. 1921, all municipal bonds on which final judgment shall be rendered by a court of record shall be canceled in open court and returned by the clerk of the court to the clerk of the proper municipality. It is admitted that this was not done prior to presentation of the bonds to respondent, but petitioner says that the old bonds and release of the judgment will be surrendered for cancellation after the approval of the funding bonds by the Attorney General and before the new bonds leave his possession. Respondent contends that to comply with the suggestion of the petitioner would be to impose duties on the Attorney General and prescribe a procedure not authorized nor contemplated by the statutes. Petitioner suggests that, under section 4273, C. O. S. 1921, the indebtedness refunded shall have the words "Paid in Full" marked in plain manner across the face of the evidence of indebtedness funded, and that the canceled obligation shall be carefully preserved, and that to do this in advance of the approval of the funding bonds by the Attorney General would be to deprive the creditor of his property at the risk of the Attorney General refusing to approve the funding bonds. Petitioner contends that "issued," as used in the statutes,

means the delivery thereof to the creditor, and we agree with that contention. Section 4273, supra, must be read in connection with sections 4272 and 4280, C. O. S. 1921, and while sections 4272 and 4280, supra, state that the evidence of the indebtedness shall be canceled in open court, section 4273, supra, provides that thereafter a statement of the funding bond procedure shall be certified to the State Auditor; that the certificate shall show that the bonds have been issued "for certain indebtedness to be surrendered"; that the certificate shall definitely describe "the indebtedness to be surrendered in exchange therefor", and that that statement is required to be signed by the officers whose signatures are attached to the bonds and attested by the proper clerk with the corporate seal of the municipality and duly acknowledge before the county clerk.

In our opinion, section 4270, C. O. S. 1921, provides a procedure for the execution and delivery to the treasurer of the municipality of the funding bonds. After they are delivered to the treasurer of the municipality, they are required to be registered with the State Auditor (section 4273, supra), and, prior to their delivery to the creditor of the municipality entitled thereto, the district court authorizing and approving them must cancel the evidence of indebtedness in open court.

This procedure conforms to the statutes and imposes no additional burden upon the Attorney General. The Attorney General is in no wise responsible for the cancellation of the evidence of indebtedness funded, and the responsibility is upon the treasurer of the municipality to see that the refunding bonds approved by the Attorney General are not delivered to the creditor of the municipality until the district court having jurisdiction has made the proper cancellation of the evidence of the indebtedness refunded.

The consideration for the refunding bonds is the cancellation of the existing evidence of indebtedness. The consideration for other bonds is the purchase price thereof. As well might the Attorney General refuse to approve a public utility bond issue because the purchase price had not been paid. The purchase price is not required to be paid until the delivery of the bonds after approval by the Attorney General and the expiration of the 30-day period of contestability. The treasurer of the municipality is without authority to deliver bonds until they have been paid for, and he is without authority to deliver refunding bonds until

the prior evidence of indebtedness has been canceled by the court having jurisdiction. That cancellation may be at any time prior to the delivery of the refunding bonds by the municipal treasurer to the person entitled thereto.

Having reached this conclusion, the writ must issue as prayed.

It is, therefore, the order of this court that a peremptory writ of madamus forthwith issue to the Honorable J. Berry King, Attorney General and ex officio bond commissioner of the state of Oklahoma, requiring him to approve and certify his approval of the refunding bonds of 1928 of the city of Madill, Okla., in the aggregate principal sum of $40,000, 40 in number, numbered from 1 to 40, both inclusive, and of the denomination of $1,000, dated June 1, 1928, and maturing $2,000 on June 1, 1933, and on the 1st day of June of each year thereafter up to and including June 1, 1952, said bonds bearing interest at the rate of 5 per cent. payable semi-annually at the fiscal agency of the state of Oklahoma in New York City.

MASON, C. J., and HUNT, CLARK, HEFNER, CULLISON, and SWINDALL, JJ., concur. LESTER, V. C. J., and RILEY, J., absent.