## McMASTERS v. TOWN OF BYARS.

No. 33797.   Oct. 24, 1950.

*223 P. 2d 545.*

Gilliland, Ogden, Withington, Shirk & Vaught, of Oklahoma City, for plaintiff in error.

L. T. Cook and H. H. Montgomery, both of Purcell, for defendant in error.

GIBSON, J. The parties occupy the same relative positions as they did in the trial court, and for convenience plaintiff in error will be referred to herein as plaintiff and the defendant in error as defendant.

This is an action wherein plaintiff seeks to recover a fee for the preparation of plans and specifications for a municipal sewer project in accordance with the terms of a contract the validity of which constitutes the issue involved. The case was submitted to the court on an agreed statement of facts and thereon defendant was awarded judgment. The errors assigned are that the judgment is contrary to the facts and contrary to law.

The stipulation, except portions thereof that are not material to our review, is as follows:

"2. That on the 5th day of October, 1935, plaintiff and defendant entered into a contract in writing whereby plaintiff agreed to, from time to time thereafter, act in the capacity of a consulting engineer for the defendant in connection with the design, supervision and inspection of such water and sewer systems as the defendant might thereafter determine to construct or install. That at the time of the execution of the said agreement there were no specific work projects in immediate contemplation of the parties nor was the plaintiff entitled to any compensation under the agreement except for such work as thereafter might be done by him at the special instance and request of the defendant. That at that time there were in the hands of the defendant's officials no funds presently available or provided for in the current year's budget for the payment of any salary or compensation to the plaintiff. That a copy of this agreement is attached to the plaintiff's petition and by reference is incorporated herein.

"3. That on the 26th day of September, 1940, the Board of Trustees of the Town of Byars caused an election to be held for the purpose of authorizing the issuance of certain sewer bonds; that a copy of the ballot used in said special election is attached hereto and made a part of this stipulation; and that as a result of the affirmative vote of the qualified taxpayer voters of the Town of Byars there was authorized under the provisions of Section 27, Article 10, of the Constitution of the State of Oklahoma the issuance of bonds by the defendant in the sum of $12,500.00 to establish a sewer system within said town and to be the exclusive property of the Town of Byars. . . .

"4. That on the 14th day of October, 1940, the bonds were sold to one Charles McCrae. That the sale of the said bonds was in all respects regular and as provided by law; and the purchaser, Charles McCrae, was ready, willing and able to make the purchase thereof.

"5. That on the 14th day of February, 1941, at their regular meeting, the Board of Trustees of the Town of Byars adopted a resolution approving, adopting and ratifying the agreement made with the plaintiff on the 5th day of August, 1935. . . .

6. That thereafter and in accordance with the resolution so adopted by the Board of Trustees on the 14th day of February, 1941, the plaintiff proceeded to prepare plans and specifications for the sewer system under contemplation.

"7. On the 14th day of March, 1941, at their regular meeting, the Board of Trustees of the Town of Byars approved the plans and specifications which had been submitted to it by the plaintiff in accordance with the Board's previous resolution of the 14th of February, 1941. . . .

"8. That the contract and claim of the plaintiff against the defendant as set forth in his petition was not made within the revenue provided for the years 1935, 1940 or 1941 and was not included in the estimate of the said Town of Byars for such years for current expenses and the said Town had no funds on hand during those years for the payment of the said services rendered by the plaintiff, and the funds for the construction of the project, including the services of plaintiff, were wholly dependent upon the proceeds of the bonds which had been previously sold to Charles McCrae on the said 14th day of October, 1940.

"9. That on the 31st day of March, 1941, the bond issue of the Town of Byars was duly approved by the Attorney General of the State of Oklahoma.

" . . .

"11. That on or about the 5th day of May, 1941, the personnel of the Board of Trustees was changed for reasons in no way connected with the sewer project; and that thereafter on the 8th day of May, 1941, the Board of Trustees of the defendant, at a regular meeting, adopted a resolution saying that the reason for the bond issue had ceased to exist as it appeared neither feasible nor proper to construct a sewer system in the Town of Byars, and that accordingly the sale of the bonds was unnecessary and the bonds should be cancelled and destroyed. . . .

"12. That said bonds were never delivered to the purchaser, but were delivered by the Attorney General to Albert S. Johnston, Town Treasurer, on the 29th day of September, 1941. That the Town of Byars never actually received any proceeds from the said bonds and the same were destroyed as hereinafter stated under the procedure provided by the statutes of the State of Oklahoma. . . .

"16. That all resolutions, notices and ordinances were regular and were in full conformity with the procedural requirements of law and no attack is made by either party as to their regularity.

"17. That all intangible taxes as may be due on this matter have been paid by the plaintiff."

It is recognized that the contract was ineffective to impose liability upon the municipality unless, at the time of the adoption of the resolution calling on plaintiff to provide the plans, the municipality was authorized to make the contract.

It is contended the municipality became so authorized immediately following the adoption of ordinance 100 which authorized the issuance of the bonds and provided for tax levies for their payment and, further, that Tit. 62 O. S. 1941 §479, which deals with and places a limitation upon contracts for purposes authorized by a bond issue, is not at variance therewith.

As authority for the contention that authority for making the contract obtained upon the adoption of ordinance 100, there is cited Town of Walters v. Orth, 59 Okla. 99, 158 P. 352. Therein a similar contract was made by the municipality after the bonds had been voted but before the adoption of an ordinance providing for tax levies to retire the bonds. We there held that the contract was void for the reason that no levy had been provided at the time it was made. It is urged that it is to be inferred from the holding that had the contract been made after the adoption of the ordinance providing for the levy, which is the case here, the same would have been held valid. We do not think such inference can be justified.

The gist of the holding there is that they could obtain no authority to contract in furtherance of the purpose of a bond issue in absence of authority to issue the bonds, which authority was lacking because no provision for retirement of the bonds had been made. The only further and logical deduction to be made is that there was no authority to create liability under the contract until liability under the bonds had been created by performance of all of the required steps including delivery of the bonds.

Tit. 62 O.S. 1941 §479, in which we emphasize the words pertinent to the discussion, is as follows:

"It shall be unlawful for the board of county commissioners, the city council or the commissioners of any city, the trustees of any town, board of education, township board, school district board or any member or members of the aforesaid commissioners, or of any of the above named boards, to make any contract for, incur, acknowledge, approve, allow or authorize any indebtedness against their respective municipality or authorize it to be done by others, in excess of the estimate made

and approved by the excise board for such purpose for such current fiscal year, *or in excess of the specific amount authorized for such purpose by a bond issue.* Any such indebtedness, contracted, incurred, acknowledged, approved, allowed or authorized in excess of the estimate made and approved for such purposes for such current fiscal year or in excess of the specific amount authorized for such purpose by a bond issue, shall not be a charge against the municipality whose officer or officers contracted, incurred, acknowledged, approved, allowed or authorized or attested the evidence of said indebtedness, but may be collected by civil action from any official contracting, incurring, acknowledging, approving or authorizing or attesting such indebtedness, or from his bondsmen." (Laws 1910-11, ch. 80, p. 183, sec. 9)

Concerning the construction of the statute and with particular reference to the italicized words, it is said in plaintiff's brief:

"The key word is 'authorized'. That is the only limitation—just so the expenditure is authorized. It does not say 'in excess of funds on hand derived from a bond issue', or any such language making a prerequisite that the *proceeds* from a bond issue must be physically in the hands of the city officials. There can be no doubt that the defendant's contract with this plaintiff was 'authorized' in the manner provided by Section 27 of the Constitution *prior* to the date it was consummated. As pointed out previously, all of the essential steps of the constitutional provision had been followed prior to the date of plaintiff's contract."

We think a construction so circumscribed is unwarranted and does violence to the legislative intent. We construe the words "the specific amount authorized" to have reference to the amount of the proceeds of the bond issue which is available as a fund to meet liabilities to be incurred in accomplishing the purpose of the bonds. To hold otherwise would be, in effect, to authorize the contracting of indebtedness payable out of a fund before the fund is provided, which type of contract we have held to be unauthorized because violative of the plain purpose of the Constitution. O'Neil Engineering Co. v. Incorporated Town of Ryan et al., 32 Okla. 738, 124 P. 19; Flood v. Town of Shidler, 127 Okla. 148, 260 P. 52.

Such fund can arise only in exchange for liability upon the bonds.

In Coppedge et al. v. Depew Township, Creek County, et al., 109 Okla. 117, 234 P. 769, we stated in the syllabus:

"Bonded indebtedness is incurred within the meaning of section 26, article 10, of the Constitution, when the bonds of the township are voted, issued approved and delivered, and not when the election is held at which they are submitted. Mitsler et al. v. Eye et al., 107 Okla. 289, 231 P. 1045."

And in the opinion we quoted with approval the following from Mitsler et al. v. Eye et al., 107 Okla. 289, 231 P. 1045:

"When is the indebtedness incurred? Obviously when the obligations by which the district is bound are issued and value received for them. There is no indebtedness until the money is received by the district. The money is not received until the bonds are issued, approved as required by law, and delivered to the purchasers."

We are of the opinion, and hold, that the words "bond issue," as used in Tit. 62 O. S. 1941 §479, denote bonds upon which the municipality has become liable, according to the tenor thereof, through a disposition and delivery of the bonds, and import that the municipality has received for such sale a consideration which constitutes a fund which is to be used for the purpose of the bond issue. In 64 C. J. S. 582, sec. 1948, it is said:

" . . . Bonds are issued, not when they are authorized or executed, but when they are delivered, that is, when the possession and control thereof pass from the municipality to the donee or purchaser or some person in whose

hands they become a claim or charge against the municipality; even though executed, the bonds do not become operative and obligatory unless and until they are delivered."

Among the cases cited as authority for the rule is Young v. Clarendon Township, 132 U. S. 340, 10 S. Ct. 107, 33 L. Ed. 356, wherein it is said:

" . . . The act of delivery is essential to the existence of any deed, bond or note. Although drawn and signed, so long as it is undelivered it is a nullity; not only does it take effect only by delivery, but also only on delivery."

A very apt statement of our view is made in State ex rel. Arn v. Woodruff, 164 Kan. 339, 189 P. 2d 899, 903, where it is said:

" . . . The word 'issue' in connection with warrants and bonds has a definite meaning . . . 'to send out, to deliver or to put into circulation.' "

A like construction was in substance applied by this court in City of Madill v. Dabney, Atty. Gen., 142 Okla. 92, 285 P. 832, where, in editorial syllabus, it is said:

"Under Comp. St. 1921, sec. 4272, providing that no refunding bonds shall be 'issued' until the proper evidence of debt for which the same are to be issued shall be delivered up for cancellation, the word 'issued' means the delivery thereof to the creditor."

The question of the legality of the original contract at the time of its execution and whether the ordinance authorizing the performance thereof created liability or was in effect an attempted ratification of an illegal act is discussed at length in the briefs. For the purpose of the review we have assumed the contract was, and that it was intended to be, effective as of the date of said ordinance. In view of the conclusion reached it is unnecessary to consider said questions and we express no opinion thereon. And, in view of our conclusion, it is unnecessary to discuss plaintiff's contention with reference to

the $250 earnest money paid by the purchaser of the bonds.

Affirmed.

DAVISON, C. J., ARNOLD, V. C. J., and WELCH, CORN, LUTTRELL, JOHNSON, and O'NEAL, JJ., concur.

