## No. 13,352.

ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY *v.*
BOARD OF COUNTY COMMISSIONERS OF THE COUNTY
OF FREMONT ET AL.

(37 P. [2d] 761)

Decided July 9, 1934.   Rehearing denied November 19, 1934.

436

Messrs. GRANT, ELLIS, SHAFROTH & TOLL, for plaintiff in error.

Mr. RICHARD E. CONOUR, for defendants in error.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

THE Atchison, Topeka and Santa Fe Railway Company sued the board of county commissioners of Fremont county and school district No. 2 of Fremont county to recover $576.43 paid in 1932 for the taxes of 1931, it being contended that the tax levy was illegal. The trial court sustained the defendants' demurrers on the ground of defect of parties defendant, i. e., the absence of the state of Colorado, and overruled their demurrers on the grounds of want of jurisdiction and insufficient facts. The plaintiff stood upon its complaint and the court dismissed the case. Both the plaintiff and the defendants complain of the adverse rulings of the court.

The complaint alleges substantially the following facts: On December 9, 1930, the district had outstanding

registered warrants amounting to $111,134.08, upon which there was about $7,300 accrued interest. The district, one Joseph D. Grigsby, and a bank that held most of the warrants agreed upon a plan "for the funding of the outstanding warrants and floating indebtedness of the district and for the borrowing of additional funds for the future uses of the district and for the payment of $7,000 to said Grigsby for his cooperation, and for the issuance of * * * so-called 'bonds' of the district to be sold by said Grigsby; all without submission to or vote by the electors of the district." Pursuant to the plan agreed upon, the district issued to the bank $50,000 of warrants to be used to borrow money to pay all outstanding warrants, and to pay $7,000 to Grigsby for services in carrying out the plan; the balance to be used to pay current expenses of the district, especially for January and February, 1931. On December 17, 1930, suit was brought in the district court of Pueblo county, in the name of M. E. Hyde (a "dummy" selected by Grigsby) to recover $140,000 from the district. In the complaint in that suit it was alleged, falsely, that Hyde had purchased and was the owner of warrants totaling $135,889.29, including the $50,000 of warrants, which, it was alleged, represented existing lawful indebtedness for labor, material and services; that there was sufficient credit in the district fund for 1930-1931 for the payment of the $50,000 of warrants; and that the district had diverted its funds to other and different purposes than for the payment of the warrants upon which the suit was based. The $50,000 of warrants remained in possession of the county treasurer, and later were cancelled pursuant to the bank's request. On the same day that the suit was commenced the district filed an answer admitting the allegations of the complaint, and consenting to the entry of judgment against the district in accordance with the prayer of the complaint; whereupon the court made a finding, based upon the pleadings, that the district was indebted to the plaintiff in the sum of $141,857.09, and

rendered judgment against the district for that amount. It is alleged that the making of the false allegations in the complaint, and the confession thereof by the district, "was a fraud upon each and every of the taxpayers of the district." Two days after obtaining that judgment, Hyde, in furtherance of the plan agreed upon, commenced in the same court a mandamus proceeding against the district to compel a tax levy to pay the judgment. On the same day the district appeared and consented to the entry of judgment as prayed; whereupon the court rendered judgment pursuant to a stipulation of the parties. The judgment ordered the district to levy a property tax sufficient to produce in 1931 $7,000 principal and $6,300 interest, and, at the option of the school board, a further sum of $6,300 for interest falling due in 1931; and to levy annually in subsequent years, up to and including 1950, a property tax sufficient to produce the several amounts specified in the judgment; and that "The proceeds received from said taxes shall be used *solely* for the purpose of paying the principal of said *judgment.*" (Italics are ours.) After reciting the quoted provision of the judgment, the verified complaint in the case at bar alleges: "That the levy has been made *pursuant to said judgment order* and the taxes hereby sought to be recovered are this plaintiff's portion or share of the taxes *so levied.*" (Italics are ours.) The judgment further ordered the issuance to Hyde of "judgment bonds" to "represent" the money judgment, and that upon the delivery of the bonds to Hyde, she should enter satisfaction of the judgment. Bonds aggregating $140,000 were issued and delivered to Hyde, who thereupon caused a satisfaction of the judgment to be entered. Grigsby sold all of the bonds "to the State of Colorado, through its State Land Board," and the state now owns them. From the argument it appears that the bonds were purchased with money belonging to the state school fund and are held for the benefit of that fund. The proceeds were used to pay the outstanding warrants

(except the $50,000 of warrants, which remained in the hands of the county treasurer and were canceled by him) and $7,000 to Grigsby, leaving a surplus, which was placed to the credit of the district. The complaint also alleges facts upon which counsel base a contention that the judgment bonds raised the bonded indebtedness of the district above the constitutional limit.

The net result is that all of the money derived from the transaction, except the $7,000 paid to Grigsby as commission, went into the school fund of district No. 2, where it belonged.

The action is brought under the following provision of section 7447 of the Compiled Laws: "In all cases where any person shall pay any tax, interest or cost, or any portion thereof, that shall thereafter be found to be erroneous or illegal, whether the same be owing to erroneous assessment, to improper or irregular levying of the tax, or clerical or other errors or irregularities, the board of county commissioners shall refund the same without abatement or discount to the taxpayer."

The plaintiff attacks the tax levy in two ways.

1. It is said that the judgment bonds are void for the following reasons: That the court had no jurisdiction to order the issuance of the "judgment bonds"; that the bonds were issued without a vote of the qualified electors; and that they raised the district bonded indebtedness above the constitutional limit. As the judgment bonds are void—so goes the argument—the levy to pay either principal or interest is void. Much is said in an attempt to distinguish this case from *Grater v. Logan County High School District,* 64 Colo. 600, 173 Pac. 714, where we held that in a suit to restrain the levy and collection of taxes to pay interest on bonds of a high school district the holders are indispensable parties, and that if service of process upon them cannot be had the suit must be dismissed. The district court held that the Grater case controlled this, and that as the state, the owner of all the bonds, cannot be sued without its con-

A

sent and has not given its consent in the present instance, the court could do nothing other than dismiss the suit, which it did.

This case does not require a decision of that question. As we have seen, it is alleged in the complaint that the judgment in the mandamus suit ordered a levy to pay, *not* the bonds, but the *money judgment,* and that the levy of the taxes, a part of which the plaintiff seeks to recover, was made "pursuant to said judgment order." If the plaintiff were right in its contention that the bonds issued to "represent" the judgment are void, it would not entitle the plaintiff to a return of taxes paid, for, if the bonds were void, the delivery thereof to the judgment creditor would not satisfy the money judgment, which would remain in full force and effect, and the peremptory mandamus to levy taxes to pay the same, and the levy made in obedience thereto, would remain unimpaired.

2. It is said that the money judgment and the mandamus judgment constitute a fraud upon the taxpayers.

A judgment rendered without jurisdiction is void and may be attacked either directly or collaterally. But where a judgment rendered by a court having jurisdiction over the subject matter and the parties and jurisdiction to render the particular judgment is obtained by fraud or collusion, it is voidable only, not void, and it is binding upon parties and their privies unless and until it is set aside in a direct proceeding brought for that purpose. It cannot be attacked by them in a collateral proceeding such as this is.

A school district or a county stands in the place of its taxpayers. There is a privity between them, the same as there is between a private corporation and its stockholders. In *Croke v. Farmers High Line Canal & Reservoir Co.,* 71 Colo. 514, 208 Pac. 466, we held that there is a privity between a corporation and its stockholders, and that a decree against the former is conclu-

sive upon the latter in respect to their rights as such. To the same effect, see *Graham v. Boston, Hartford & Erie R. R. Co.,* 118 U. S. 161, 6 Sup. Ct. 1009; *Sanger v. Upton,* 91 U. S. 56. If corporation officers, by collusion, should consent to a judgment against the corporation, based upon false and fraudulent claims, stockholders would not be helpless. Upon making such a showing a stockholder would be permitted to file a motion to set aside the judgment, or he could bring a suit in equity to set it aside; but unless and until set aside in a direct proceeding brought for that purpose, the judgment would be binding, not only upon the corporation, but also upon the stockholders. It could not be attacked in a collateral proceeding.

A similar rule applies in the case of the taxpayers of a school district, of a county, or of any other political division of the state. In 15 R. C. L., p. 1029, it is said: "A state, county, municipality or other governmental body is a representative of its citizens and taxpayers for certain purposes and not otherwise. With respect to the purposes for which it is not their representative, a judgment against it cannot affect them as res judicata, while, as to matters in which it is their representative, such a judgment is as conclusive on them as if they were parties to the record."

■ If the officers of a school district or of a county, etc., acting in collusion with the plaintiff in a suit against such political division, were to permit judgment to be rendered on false and fraudulent claims, such judgment would be, not void, but merely voidable, and although a taxpayer could have it set aside in a direct proceeding, he could not attack it in a collateral proceeding. Unless and until set aside in a direct proceeding, the judgment would be binding upon the taxpayers.

■ It has been held repeatedly that a judgment against a county or its legal representatives, in a matter of general interest to all the people, as, for example, one respecting the levy and collection of a tax, is binding, not

only on the county and its official representatives named as defendants, but also upon all taxpayers of the county though not named as defendants in the case. *Bear v. Board of County Commissioners,* 122 N. C. 434, 29 S. E. 719; *Clark v. Wolf,* 29 Ia. 197; *State ex rel. v. Rainey,* 74 Mo. 229; *Sauls v. Freeman,* 24 Fla. 209, 4 So. 525; *Cannon v. Nelson,* 83 Ia. 242, 246, 48 N. W. 1033. And see 15 R. C. L., page 1030, where it is said: "A judgment against a county or its legal representatives in a matter of general interest to the people thereof concludes not only the parties named as defendants, but also all the citizens of the county not so named."

In *State ex rel. v. Rainey, supra,* one Davis obtained, in the federal court, a default judgment against Greene county on overdue interest coupons. The federal court issued a mandamus directing the levy of a tax to pay the judgment. The levy was made. Rainey, a taxpayer, refused to pay the tax and was sued therefor. In his answer Rainey attacked the coupons, and the bonds from which they were detached, alleging that they had been issued without authority of law and were void, and also attacked as void the tax levied to pay the coupons. It was held that as the federal court had jurisdiction to render the judgment, the judgment was binding unless set aside in a proper proceeding, and that it could not be attacked collaterally. In answer to the contention that the taxpayers were not parties to the suit, and therefore that Rainey was not bound by the judgment, the court said: "It has been argued by counsel with much plausibility and ability, that plaintiff is not bound by the judgment rendered in the case of Davis against Greene county, or the judgment rendered in the mandamus proceeding to compel the county court to pay, because he was not a party *eo nomine* in either proceeding. We have not been able to find, nor have we been cited to any authority sustaining this position of counsel. On the contrary, all the authorities we have examined touching this point overthrow the position. In the case of *Clark*

*v. Wolf*, 29 Iowa 197, the precise question was considered at length, and it was there held that a judgment against a county or its legal representatives, in a matter of general interest to all the people thereof, as one respecting the levy and collection of a tax, is binding not only on the official representatives of the county named in the proceeding as defendants, but upon all the citizens thereof though not made parties defendant by name. This we think is so both on principle and authority, for in suits of the character mentioned the legally constituted representatives of the county stand in the place of each citizen of the county who is liable to be called on as a taxpayer to contribute his proper proportion to liquidate the demand which a judgment may establish."

Section 7447 of the Compiled Laws, quoted above, provides for a refund of those taxes only "that shall thereafter be found to be erroneous or illegal." The money judgment was a solemn adjudication that the warrants upon which it was based were valid, and that the district was lawfully indebted to the plaintiff in that case in the total amount of those warrants. The mandamus judgment was a solemn adjudication that the plaintiff in the money demand suit was lawfully entitled to a levy of taxes to pay the judgment rendered therein, and that a levy made as ordered by the court would be a lawful, valid levy. Unless and until set aside, those judgments constitute insurmountable obstacles to the recovery of taxes under section 7447, supra.

That this plaintiff realized that it is necessary to get the money judgment out of the way before it can obtain a refund of taxes under section 7447, supra, and that that judgment can be set aside only in a direct proceeding, is evidenced by the fact that this plaintiff, jointly with another taxpayer, appeared in the case and petitioned the court to set aside that judgment. They failed to obtain the desired relief; whereupon this plaintiff commenced the present suit, in which it makes a collateral attack upon the money judgment and the mandamus

judgment, contending that the matters therein adjudged to be lawful are illegal. Such an attack cannot succeed.

In this collateral proceeding we cannot pass upon the validity of the warrants upon which the money judgment against the district was based, or review either the money judgment or the judgment in the mandamus case. In each of those cases the court had jurisdiction of the subject matter and of the parties and jurisdiction to enter the particular judgment; hence it is binding upon the district and its taxpayers unless and until it is set aside in a direct proceeding brought for that purpose.

The judgment of the district court was that the action be dismissed. That disposition of the case was the only one possible under the law.

For the reasons stated in this opinion, the judgment of dismissal is affirmed.

MR. CHIEF JUSTICE ADAMS, MR. JUSTICE CAMPBELL and MR. JUSTICE BURKE dissent.

MR. JUSTICE BURKE, dissenting.

Believing as I do that the affirmance of this judgment strips from taxpayers the protection of a statute which has stood unshaken for more than half a century, sanctions, by indirection, a plain violation of the Constitution, and covers a fraud with the cloak of an inapplicable technical rule whose protection it has not even invoked, I must dissent.

The reasons urged by counsel for a reversal are not answered. I assume, therefore, they are considered as probably valid but for that given by the court. But since those reasons involve important legal questions fairly presented, I think they ought not be thus ignored. Hence I consider first the case made by the record.

Some facts, perhaps, should be added to the statement contained in the court's opinion. Suffice it here, however, to say that the complaint, which for present purposes must be admitted as true, sets up a conspiracy to frame a case with a dummy plaintiff; on false allegations

and a false answer, for the purpose of deceiving the district court and misleading it into entering a judgment which could never have been obtained had the truth been told, and for the purpose of defrauding taxpayers. Based upon the judgment so entered a mandamus suit was immediately filed to secure a second judgment to compel a tax levy to pay the first. The second judgment was entered on a stipulation framed by the parties to the first, and in furtherance of the original plan, and thereby the alleged indebtedness was merged into so-called judgment bonds, negotiable instruments, which were passed to the state. The company paid, under protest, the tax so levied, and sued to recover. To this complaint the county demurred for want of jurisdiction of the subject matter, and both defendants demurred for want of facts, and defect of parties, i. e., because the state was not, and could not be, made a defendant. The demurrers for defect of parties were sustained and thereto the company assigns error. The demurrers for want of facts and jurisdiction were overruled and thereto the county and district assign cross-error. Judgment of dismissal was accordingly entered against the company, to review which it prosecutes this writ. Such are the only questions presented by the record.

Pertinent, constitutional and statutory provisions are:

"No debt by loan in any form shall be contracted by any school district for the purpose of erecting and furnishing school buildings, or purchasing grounds, unless the proposition to create such debt shall first be submitted to such qualified electors of the district as shall have paid a school tax therein, in the year next preceding such election, and a majority of those voting thereon shall vote in favor of incurring such debt." Sec. 7, art. XI, Colo. Const.

"The board of education of any school district may submit at any regular or at a special election called for the purpose, to such of the qualified electors of the district as shall have paid a school tax therein in the year

next preceding such election, the question of contracting a bonded indebtedness, for the purpose of erecting or furnishing school buildings or purchasing grounds, or for funding floating debts or for any of said purposes." C. L. 1921, p. 2146, §8356.

"In no event shall the aggregate amount of bonded indebtedness of any school district of the first or second class exceed five per centum, * * * of the assessed value of the property in such district for the year next preceding the date of said bonds; * * *." S. L. 1923, p. 546, c. 162, §1.

"It shall not be lawful for the officers of any district to issue warrants at any time in an amount in excess of the tax levy for the current year." C. L. 1921, p. 2123, §8302.

"Except in districts having a school population of more than 30,000, no orders shall be drawn on the county treasurer except in favor of parties to whom the district has become lawfully indebted." C. L. 1921, p. 2142, §8345 (S. L. 1919, p. 613). S. L. 1929, p. 595, c. 167, §1.

"In all cases where any person shall pay any tax, interest or cost, or any portion thereof, that shall thereafter be found to be erroneous or illegal, whether the same be owing to erroneous assessment, to improper or irregular levying of the tax, or clerical or other errors or irregularities, the board of county commissioners shall refund the same without abatement or discount to the taxpayer." C. L. 1921, p. 1906, §7447.

I consider the questions presented in the following order: (1) Sufficient facts; (2) jurisdiction; (3) defect of parties; because if plaintiff has no cause of action, parties and jurisdiction are immaterial; if plaintiff has a cause of action but the court is without jurisdiction, defect of parties is immaterial; but if plaintiff has a cause of action and the court has jurisdiction the necessary parties must be in before the suit can proceed.

1. The only objections urged to the sufficiency of the complaint are: (a) Failure to allege that the money

borrowed was not for any of the purposes specified in section 7, article XI of the Constitution, supra, or in section 8356, C. L. 1921, supra; (b) no cause of action exists because it appears from the complaint that the warrants were issued and the money borrowed for lawful purposes, citing *Sweet v. D. & R. G. R. R. Co.*, 59 Colo. 131, 147 Pac. 669.

a. School districts and their officers derive all their powers through delegation, constitutional or statutory, from the state. If not clearly conferred, either expressly or by necessary implication, they are withheld. 24 R. C. L. p. 562, §6; p. 564, §7; p. 568, §13. Said section 7 of article XI of the Constitution is a specific limitation, not a grant, and no necessary implication of the powers here exercised can be drawn from it. Said section 8356, C. L. 1921, is a grant which includes the power of ''contracting a *bonded* indebtedness, for the purpose of * * * funding floating debts,'' which was the thing here attempted, but only after submission of the proposition to the qualified electors of the district, which was not here attempted. Again, the bonds issued exceeded the express limit fixed by law and could not have been issued even had they been approved by the electors. No other provision of Constitution or statute is relied upon. Hence not only was there no grant, express or implied, of the power to contract this bonded indebtedness, but there was an express statutory prohibition against it.

b. This contention rests solely upon the Sweet case. There, however, no attack was made upon the validity of the indebtedness; here $50,000 of warrants were illegally issued for which no prior debts existed. There county warrants were involved and counties may exceed anticipated revenue; here school district warrants were involved and school districts may not exceed anticipated revenue. There the levy was ordered to pay a judgment; here the levy was ordered to pay bonds, issued by order of court in excess of the statutory limit, to borrow money

to pay a judgment. Hence the Sweet case has no application.

2. The plea of want of jurisdiction is based upon the absence of the state, which, it is claimed, is the real party in interest; and the assertion that this is, in fact, a suit against the state; and that, since no action can be maintained against the sovereign without its consent and no consent has been given, no jurisdiction exists. This objection is therefore inseparable from that of defect of parties, and dependent upon it. Had the bondholder been subject to suit, and served, jurisdiction would be admitted. For the moment, therefore, I assume it.

3. This action was brought under section 7447, C. L. 1921, supra. That it was properly so brought, subject to the objections hereinbefore answered, and could be maintained if the state voluntarily entered its appearance as a defendant, is conceded. The principal contention is that since the bonds, illegally issued to pay an unlawful judgment obtained on invalid claims, have passed into the hands of the state, and since the state cannot be sued without a consent it has not given, the taxpayers are helpless, and for the next twenty years must submit to this extortion. If so, this judgment should be affirmed; if not, it should be reversed. That an isolated case, and numerous judicial declarations in others not identical, seem to support that contention, cannot be denied. Since, however, no express statute so declares, the first question is, Has it been so decided in this jurisdiction? If not, the second is, Does our written law, interpreted in the light of outside precedents, and guided by reason, justice and public policy, so demand?

Cases are not wanting here which support the position of the county and district in actions in injunction, but no such case arising under the statute which governs this (said section 7447, supra), has been called to our attention or is known to me. So far as Colorado is concerned, the chief bulwark of county and district is *Grater v. Logan High School District*, 64 Colo. 600, 173 Pac. 714.

They recognize the fact that this was an injunction suit but contend that the reasoning of the opinion, as it relates to the subject of parties, is here applicable. Not only for this reason, but because that case, and the one upon which its main conclusion rests, points directly to said section 7447, as furnishing the proper remedy in these tax refund cases, a plain, speedy and adequate remedy at law which, in most instances, forestalls resort to equity, it becomes necessary to examine this Grater case and call attention to the condition of the record therein. It was a suit to enjoin the collection of a tax to pay bonds and interest. A demurrer for want of facts and absence of parties (the bondholders) was overruled May 2, 1914. Answer was filed May 22, 1914, and reply not until May 16, 1916. On the latter date the trial opened. When plaintiff's first witness was called and sworn an objection was made to the introduction of any evidence. Of the sixteen grounds of this objection the first was because the bonds had been issued and sold to unknown, nonresident, parties, and the seventh and eighth were that no facts were stated in the complaint which would justify injunction. After argument "the court sustained said objection, holding that since the demurrer was overruled in this case the Supreme Court [Nov. 1, 1915] in the case of Nile Irr. Dist. v. English [60 Colo. 406, 153 Pac. 760] had held that an injunction to restrain the collection of taxes does not exist as a remedy * * * and that therefore the objection would be sustained particularly for said reason * * *." To the judgment entered accordingly five errors were assigned, the second of which goes to the holding that injunction did not lie, but no one of which refers to defect of parties. The only ruling of the trial court on defect of parties was on the overruling of the demurrer, and that, being in favor of plaintiff in error, he did not, and could not, complain, and no cross-error was assigned by the district. The opinion of this court affirming the judgment makes no reference to the assignments. It

shows that the cause was disposed of below on the motion to exclude testimony "and to dismiss the complaint because of its failure to state a cause of action, and for numerous other reasons." Not only was the question of the existence of the remedy by injunction the first question to be determined, because if the action did not lie defect of parties was immaterial, but it was the only question decided by the trial court against the plaintiffs in error and the only question presented by the assignments. Nevertheless, this court, in its opinion, first noted that "It appears from the complaint that the bonds are now in the hands of unknown third parties" and held that "In such circumstances the bondholders being necessary parties, the great weight of authority is against the granting of injunctive relief." It next took up the question of remedy by injunction and held, on the authority of *Nile Irr. Dist. v. English, supra,* that injunction did not lie. It thus appears that what was said in that opinion on the question of defect of parties was dictum. It should be noted that in that portion of the opinion in the English case (appearing on page 412 thereof) which is quoted with approval in the Grater case, the court says: "Our statute, sec. 5750 R. S. 1908 [which is said section 7447, C. L. 1921], * * * affords a complete remedy in a proper case, * * *." I therefore conclude that the proposition contended for by defendants in error finds no support in adjudicated cases in this jurisdiction.

The whole intricate and perplexing question of the necessity, generally, of making bondholders parties in suits in injunction to prohibit the levy and collection of taxes to pay bonds, in suits to recover taxes paid under protest, and in similar actions for similar purposes, is elaborately examined and ably discussed in the briefs before us. I find no necessity, however, for entering this practically limitless morass, or attempting to plat a pathway through it. The vital question here is much simpler, i. e., Where the *state* is the bondholder, and the

suit for refund is under this particular statute, may it proceed without the formal appearance of the sovereign?

In considering this question the following facts should be borne in mind: The statute applies "in *all* cases" where an illegal tax is paid under protest. It does not make suit to recover necessary. It says, "the county commissioners shall refund." The provision has existed since 1870. In 1913 it was modified by a further provision that the refund should be made only on approval of the tax commission. C. L. 1921, p. 1908, §7460. But we have held that said amendment does not affect the right of the taxpayer to recover under said section 7447. *First Nat. Bank v. Patterson,* 65 Colo. 166, 176 Pac. 498. Suit follows only when the commissioners fail in their statutory duty. Doubtless in most cases they refund, on approval of the tax commission, without suit. Had they done so here, without notice to judgment debtor or bondholder, would their action have been lawful? Certainly so. What then would have become of the alleged rights of the state? Said section 7460 provides for a hearing before the commissioners on questions of refund, but requires notice to no one save the assessor. In many cases of illegal or erroneous levy the tax, or some part of it, is for general or special state purpose, for state institutions, for municipalities, for school districts, etc. If the state is an indispensable party in the instant case why not it and these other subdivisions and agencies in actions to recover taxes in which they may be interested? And if so why should not it or they, as well as the assessor, have notice of hearings in such cases on applications for refund? Their interest in refunds resulting from suits is neither greater nor different from their interest in refunds resulting from hearings. Counsel for the county and district, doubtless recognizing the absurdity and untenability of any such theory, admit, in substance, that as to all such taxes the statute makes the county commissioners agents, for the purposes of refund by hearing or suit, of the state and all governmental divi-

sions interested. In fact that proposition has been settled. *Union Pac. R. R. Co. v. Weld Co.,* 247 U. S. 282, 38 Sup. Ct. 510, 62 L. Ed. 1110. *First Nat. Bank v. Patterson,* 65 Colo. 166, 174, 176 Pac. 498. But counsel says: "There is a clear-cut distinction between taxes levied for administrative purposes and taxes levied for payment of bonds," which are "trust funds, the beneficial interest in which belongs to the bondholders." Hence, here, "the State of Colorado occupies the position of a bondholder entitled to the proceeds of a trust fund." These are mere conclusions deduced from authorities in which the rights of private bondholders were under consideration and but one of which deals with a similar suit under a similar statute. Our statute makes no such distinction. If the tax collected belongs exclusively to a state institution or a governmental division, why is it not as much a trust fund as if necessarily segregated to pay a bond? If the state can make the county commissioners agents for itself, and all its subdivisions and institutions, in actions for the refund of taxes levied and collected for administrative purposes, involving their daily existence, their very life, why may it not do likewise in actions for the refund of taxes to pay bonds held as investments, and why has it not done so?

Defendants in error here cite a single case arising under a similar statute and allegedly supporting their position. *St. Louis-San Francisco Ry. Co. v. Blake,* 36 F. (2d) 652. There judgment creditors and bondholders were not made parties and the United States Circuit Court of Appeals held they must be. But there they were private persons and within reach of process, presenting a situation differing widely from that which now confronts us. Moreover, that decision involved the construction of an Oklahoma statute and the Supreme Court of that state took a contrary view. *Eaton v. St. Louis-San Francisco Ry. Co.,* 122 Okla. 143, 251 Pac. 1032.

Assuming that otherwise the state would be an indispensable party defendant in the present proceeding, it

seems clear that the Legislature has designated the county commissioners as its agents to represent it in applications for tax refunds under the statute in question and elected to be bound by their action, and that, in authorizing suits against the commissioners in case of their failure to refund in the circumstances defined by said section 7447, the state has consented to the suit, so far as such consent is necessary to bind it, and designated the county commissioners as its representatives for that purpose.

I therefore think that the state, by statute duly passed by the Legislature, is, through its agents the county commissioners, already a party defendant, by consent, in the present litigation. Since it is clear that judgment debtor and bondholder, if not indispensable parties, are by reason of their status as such, proper parties, and since the district is already in by its duly authorized officers, and the state by its statutory agents, and might further appear by its attorney general if he so elected, there is no apparent reason why this action should not proceed.

Notwithstanding the foregoing the court's opinion now holds that the present suit is a collateral attack upon a judgment and so fails. For many reasons, based upon what I conceive to be well established principles, I think that holding is erroneous.

This action has nothing to do with an attack upon a judgment. It is a simple suit under a special statute, to recover a tax illegally exacted and paid under protest. If it succeeds, the judgment stands just where it did before. In fact, even the bonds so stand. For example: If this were a suit to recover a tax levied on exempt property, and all taxes on similar property had been set aside by law to pay bonds issued to erect a building at the State University, when the tax was refunded the bonds would still stand even though there was so much property in the same class, and hence governed by the decision, that a wholly insufficient amount remained subject to the tax to ever pay them.

Moreover, the relief here sought is against the tax, not against the judgment or the bonds. An attack upon the latter cannot be spelled out of the complaint and no objection to such an attack is even hinted at in demurrers or assignments. Hence the question is wholly absent from this record.

But assuming now that it is otherwise, it is not presented by the briefs. It is well established, in this and other tribunals, that a reviewing court, where necessary to do justice, will consider questions fairly presented by the record but not relied upon by counsel in argument. Here, however, the court goes afield for such a question to defeat a taxpayer of his right to recover an illegally exacted tax, and by the application of a technical rule raises a barrier of protection for fraud and collusion. In that particular I think no precedent can be found for the opinion.

If the court's opinion is right the defense of indirect attack upon a judgment would be good here though the bondholder were a private resident and joined as a defendant. The opinion, in effect, writes into the statute this exception, "Provided, however, that no recovery shall be had hereunder if the levy has been made to pay an illegal judgment, or to pay bonds illegally issued." Yet the statute says that under it may be recovered taxes illegally exacted "in all cases."

Going still further now and assuming that the question of a collateral attack is presented by this record and may with propriety be considered by the court, what have we? The Legislature has unquestioned power to authorize a collateral attack in a particular case. If this is such an attack it has been specifically authorized by said section 7447 by the provision for recovery of taxes thereunder "in all cases."

The defense of collateral attack is not jurisdictional. It may be raised or waived. It was not raised in the trial court and is not raised here, hence, if otherwise in the record, it is waived.

Again, the levy objected to is directed by the second judgment. It is not mentioned in the first. While this second judgment by its language provided that the levy should be made to pay the first, it also provided that the first should be paid by bonds which the second authorized, and it was in fact so paid and discharged. This second judgment approved the form of those bonds and that form specifically provided that the bonds should be paid by the levy in question. Certainly the first judgment could not be paid twice nor could the levy be used for both purposes. The court was wholly without power to order the issuance of these bonds. That could only be done by a vote of the electors. Hence the court had no jurisdiction to enter the particular judgment and, that want of jurisdiction appearing on the face of the record, the judgment is void. *People ex rel. v. Burke,* 72 Colo. 486, 212 Pac. 837. A judgment void on its face may always be attacked collaterally, and want of jurisdiction may be raised here for the first time.

It is alleged that this judgment was procured by fraud, practiced in the very act of obtaining it. Such a judgment may be collaterally attacked. 34 C. J., p. 565, §866. It is alleged that this judgment was procured by collusion. Such a judgment may be collaterally attacked by a third person when his rights in litigation are threatened by it. Id. §867. In fact, a third person whose rights are injuriously affected by a judgment may always attack it collaterally. 34 C. J., p. 526, §832; 2 Black on Judgments (2d Ed.), §534; *Beatty v. Davenport*, 45 Wash. 555, 559, 88 Pac. 1109; 122 A. S. R. 937, 13 Ann. Cas. 585.

For the reasons given I have no doubt this judgment should be reversed.

I am authorized to say that Mr. Chief Justice Adams and Mr. Justice Campbell concur herein.