**DENVER–GREELEY VALLEY WATER USERS ASS'N et al. v. McNEIL et al.**

No. 2489.

Circuit Court of Appeals, Tenth Circuit.

Aug. 24, 1942.

Petition for Rehearing Withdrawn
Nov. 17, 1942.

BRATTON, Circuit Judge, dissenting.

———◆———

Reid Williams, of Denver, Colo. (J. Donovan Stapp, of Denver, Colo., on the brief), for appellants.

Albert L. Vogl, of Denver, Colo. (Carle Whitehead and Frank A. Wachob, both of Denver, Colo., on the brief), for appellees.

Before BRATTON and HUXMAN, Circuit Judges, and SAVAGE, District Judge.

SAVAGE, District Judge.

This case is before the court for the fourth time. The first appeal resulted in affirmance of a judgment for John McNeil, Winthrop L. Fay and Marion E. Plouff [1] against the Denver-Greeley Valley Irrigation District [2] for the amount due them on bonds and interest coupons issued by the irrigation district, with the qualification that the judgment be enforced in accordance with the law of Colorado. It was observed in the opinion of the court that under the law of Colorado the judgment could be collected only out of a special fund created by the levy of special assessments against the land situated in the irrigation district. Denver-Greeley Valley Irrigation District v. McNeil, 10 Cir., 80 F.2d 929.

Special assessments had been timely levied sufficient in amount to produce a fund for the payment of the principal of the bonds and all interest coupons, except the coupons maturing during the years 1913 to 1919 inclusive, if all taxes had been paid. After the judgment became final, levies were made in 1936 against certain lands in the irrigation district sufficient in the aggregate to produce a fund for payment of interest coupons maturing during the years 1913 to 1919 inclusive if the special assessments had been paid. But in making these levies the assessors and county commissioners of Weld and Adams counties omitted about 20,000 acres of land which was included in the irrigation district in 1909 when the bonds were issued. The bondholders instituted an ancillary mandamus action seeking to require the making of a levy against the omitted land for the purpose of raising a fund for payment of their judgment. On appeal this court held that a writ of mandamus should issue to require a levy on all lands within the irrigation district as of the date upon which the bonds and coupons issued sufficient in amount to produce a fund for payment in full of that part of the judgment in the original case which represented recovery on the interest coupons maturing in the years 1913 to 1919 inclusive. Denver-Greeley Valley Irrigation District v. McNeil, 10 Cir., 106 F.2d 288.

An order was entered by the trial court in conformity with the mandate of this court. The county officers and the officers of the irrigation district in compliance with the order of the court caused seven separate levies to be made in 1939. The lands upon which the special assessments were delinquent were sold for taxes in 1940. Tax sale certificates were issued to the irrigation district.

In February, 1941, an order was made by the trial court directing the officers of the irrigation district to pay to the clerk of the court all money realized from the 1939 levies and to assign and deliver to the clerk of the court all tax sale certificates resulting from such levies for the benefit of the judgment creditors. An appeal from the order was taken to this court. The appeal was dismissed in June of 1941, and the order of the trial court was complied with.

---

[1] Hereinafter called bondholders.

[2] Hereinafter called irrigation district.

On April 16, 1941, certain owners of land in the irrigation district and the Denver-Greeley Valley Water Users Association, acting through their attorney, David J. Miller, filed an action in the district court of Weld County, State of Colorado, against Harvey E. Witwer, county treasurer of Weld County, and ex officio treasurer of the irrigation district, H. L. Prather, county treasurer of Adams County, and the bondholders. The plaintiffs pray for judgment as follows:

1. Directing the treasurers of Weld and Adams counties to accept interest coupons maturing during the years 1913 to 1919 inclusive in payment of the special assessments levied in 1939.

2. Determining whether the defendant bondholders are entitled to have a levy of execution against assets of the district.

3. Declaring the tax sale certificates issued because of non-payment of special assessments levied in 1939 null and void.

4. Declaring tax sale certificates issued for non-payment of special assessments levied in 1939 on lands previously excluded from the irrigation district null and void.

5. Declaring the rights and liabilities of the parties with reference to bonds and coupons of the irrigation district.

On October 1, 1941, the trial court, upon motion filed in the original case by the bondholders, issued an order directing the appellants to show cause why they should not be punished for contempt by reason of their action in filing and prosecuting the suit in the state court. In such motion the bondholde. recited the history of the litigation and alleged that appellants had conspired together to maintain the action in the state court for the purpose of circumventing and obstructing the jurisdiction of the federal court and nullifying its judgments; that the appellants are in contempt of court and, if not punished for such contempt, will by further prosecution of the suit in the state court nullify its orders, judgments and decrees by requiring the treasurers of Weld and Adams counties to accept worthless interest coupons in redemption of the tax sale certificates now held in the registry of the court; and that appellants by their contemptuous conduct had caused the bondholders to expend sums of money in defending the suit in the state court.

The appellants in their reply to the motion to show cause admitted all the facts alleged in the motion but denied that they were in contempt of court or had violated any judgment, order or decree of the court in filing and prosecuting the suit in the state court. They further controverted the claim of the bondholders for damages.

At the hearing on the order to show cause, the court heard evidence only on the question of damages. An order was entered finding the appellants in contempt of court; assessing damages against them in the amount of $560.96; and restraining the appellants from proceeding in the state court suit other than to dismiss the action with prejudice.

It is urged by appellants that the trial court committed error in adjudging them in contempt and in enjoining them from the further prosecution of the suit in the state court.

■■ It is well settled that disobedience of any lawful and valid judgment, decree or order of a court acting within its jurisdiction of which one has notice or actual knowledge constitutes contempt of court. It is equally well settled that it is contempt of court to interfere with property which is in custodia legis. But in determining in contempt proceedings whether an order, judgment or decree of a court has been violated, such order, judgment or decree will not be expanded by implication beyond the meaning of its terms when considered in the light of the issues and the purpose for which the suit was brought. 12 Am.Jur., 404–406; Terminal Railroad Association of St. Louis v. United States et al, 266 U.S. 17, 45 S.Ct. 5, 69 L.Ed. 150.

■ The federal courts are granted authority to punish for contempt by Section 268 of the Judicial Code, 28 U.S.C.A. § 385. Such power is limited to cases involving the misbehaviour of any person in the presence of the court or so near thereto as to obstruct the administration of justice, the misbehaviour of any officers of the courts in their official transactions and the disobedience or resistance of any person to any lawful writ, process, order, rule, decree or command of the courts. The recent case of Nye et al v. United States, et al., 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172, is not controlling because the question there under consideration was whether the misbehaviour complained of was in the presence of the court or so near thereto as to obstruct the administration of justice. However, it was there pointed out that it is intended by Section 268 to limit the power of the courts to punish for con-

70

tempt. The obvious inference to be drawn from the case is that authority of the courts to punish for contempt should not be extended beyond the plain terms of the statute.

The trial court found that the filing and prosecution of the suit in the state court interfered with the processes of the court in the enforcement and collection of its judgment; that the suit was instituted for the purpose of interfering with the enforcement and collection of such judgment; and that such suit would create conflict and confusion in the collection of the judgment and enforcement of the orders of the court. The court concluded that appellants were guilty of contempt in filing the suit in the state court for the purpose of having that court issue orders, judgments and decrees which would conflict with its judgment, orders, mandates, decrees and processes.

In the original suit a qualified judgment was entered in favor of the bondholders against the irrigation district. Subsequently, the court issued a writ of mandamus commanding the proper county officers and the officers of the irrigation district to levy special assessments on all lands within the irrigation district. This command of the court was obeyed. Thereafter the court ordered the officers of the irrigation district to pay into the registry of the court all money received in payment of special assessments and to assign and deliver to the clerk of the court the tax sale certificates which came into existence as a consequence of the levy of such special assessments. This order of the court was likewise complied with in all respects. It thus appears that there has been no resistance to any order or decree entered by the court. Disobedience could only result from either a failure or refusal by the parties to perform some act required of them by the court or the commission of an act forbidden by an order of the court. The orders entered by the court required affirmative action on the part of the county officers and the officers of the irrigation district. There was complete acquiescence in and literal compliance with such orders. It seems abundantly clear that the action taken by appellants in filing and prosecuting the suit in the state court cannot be reasonably construed as disobedience of any judgment, decree or command of the court.

The remaining question is whether it was error for the court to enjoin the appellants from further prosecution of the action in the state court. The bondholders contend that prosecution of the suit was properly enjoined because the relief sought in the state court by appellants would destroy or render valueless property in the possession of the federal court.

Section 265 of the Judicial Code, 28 U.S.C.A. § 379, provides: "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

In Toucey v. New York Life Insurance Company, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100, 137 A.L.R. 967, the court discussed at length the narrow bounds to which the federal courts are limited by Section 265 with respect to enjoining proceedings in state courts. It was there held that a federal court does not have power to enjoin parties from prosecuting a suit in the state court merely because the claim in controversy has previously been adjudicated in the federal court. The remedy is to plead and prove the judgment as res judicata in the state court. A federal question is thus raised which is reviewable in the Supreme Court of the United States. It was pointed out that there are certain legislative exceptions to Section 265 as exemplified by the removal and interpleader acts. Another exception is the well established rule that Section 265 does not preclude the federal courts from enjoining a state proceeding seeking to interfere with property in the custody of the court. It is settled law that the court, whether federal or state, which first takes possession of a res withdraws the property from the reach of the other. Where the action is in rem the effect is to give the court possession or control, actual or potential, of the res, and another court is precluded from exercising jurisdiction over the same res in an action subsequently brought. If the action first brought is in personam, another action for the same cause in another jurisdiction is not precluded. Each court is free to proceed in its own way without reference to the proceedings in the other court. Kline et al. v. Burke Construction Company, 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077; Lion Bonding &

Surety Company v. Karatz, 262 U.S. 77, 43 S.Ct. 480, 67 L.Ed. 871; Palmer v. State of Texas et al., 212 U.S. 118, 29 S.Ct. 230, 53 L.Ed. 435; Farmers' Loan and Trust Company v. Lake Street Elevated Railroad Co., 177 U.S. 51, 20 S.Ct. 564, 44 L.Ed. 667. The exception which applies in the res cases is referred to as a rule of necessity to prevent friction and unseemly conflict between courts of concurrent jurisdiction. Where the necessity does not exist, the rule does not apply. Kline v. Burke Construction Company, supra; Covell v. Heyman, 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390.

■ But this rule is not without qualifications and refinements. It is confined in its operation to instances where there is substantial identity in the interests represented, in the rights asserted and in the purposes sought. Pacific Live Stock Company v. Lewis, 241 U.S. 440, 447, 36 S.Ct. 637, 60 L.Ed. 1084. If the issues in the subsequent suit are different from those involved in the first suit and the subject matter is not identical, there can be no infringement of the jurisdiction of the court in which the first case is pending by reason of the prosecution of the second suit. The mere fact that the two suits relate to the same physical property does not justify a restraint of the second suit by the court first acquiring jurisdiction. Empire Trust Co. v. Brooks, 5 Cir., 232 F. 641; Harkin et al. v. Brundage et al., 276 U.S. 36, 48 S.Ct. 268, 72 L.Ed. 457. Furthermore, the necessity does not exist which would warrant injunctive relief where the subsequent action does not create a conflict between the courts over the possession or custody of the res. McClellan et al. v. Carland, 8 Cir., 187 F. 915; Commonwealth Trust Co. et al. v. Bradford, 297 U.S. 613, 56 S.Ct. 600, 80 L.Ed. 920; General Baking Co. v. Harr, 300 U.S. 433, 57 S.Ct. 540, 81 L.Ed. 730. See, also, Boynton et al. v. Moffat Tunnel Improvement District et al., 10 Cir., 57 F.2d 772; Ingram v. Jones et al., 10 Cir., 47 F.2d 135.

The original action brought by the bondholders culminated in a qualified judgment against the irrigation district. The action was in personam. The writ of mandamus issued by the court requiring the county officers and officers of the irrigation district to levy special assessments was likewise an action in personam. It is extremely doubtful that the mere retention of possession of the tax sale certificates by the clerk of the court would transform the suit into an action in rem but this question we need not decide.

■ By the suit in the state court, the appellants seek a judgment which would require the treasurers of Weld and Adams counties to accept interest coupons maturing during the years 1913 to 1919 inclusive in payment of the special assessments levied in 1939 and in redemption of the tax sale certificates held by the clerk of the federal court. In addition, the appellants ask that the tax sale certificates be adjudged null and void and ordered canceled. The jurisdiction of the federal court has not been invoked for the purpose of determining these issues. The lands situated in the irrigation district upon which the special assessments were delinquent were sold in accordance with the law of Colorado. The tax sale certificates were issued and delivered to the irrigation district in conformity with the law of Colorado. The question of whether interest coupons may be used to pay such special assessments and to redeem the tax sale certificates must be determined by the law of Colorado. The mere fact that the tax sale certificates are held by the clerk of the federal court for the benefit of the judgment creditors does not deprive appellants of their right to have a state court of competent jurisdiction adjudicate these issues. Some fatal defect may be disclosed in the statutory proceedings leading up to the issue of the tax sale certificates which would compel a conclusion that the certificates are void and should be canceled. It may be made to appear that under the Colorado law the appellants have an absolute right to apply interest coupons in payment of special assessments and in redemption of tax sale certificates. We are not confronted with a situation where courts of concurrent jurisdiction are attempting to exercise jurisdiction over the same subject matter. Neither are we confronted with a situation where courts of concurrent jurisdiction seek to obtain possession or custody, either actual or potential, of the same thing at the same time. The trial of the issues raised in the state court would not result in a conflict with the federal court over possession or control of the tax sale certificates. Since the issues raised in the state court must be decided according to state law and such issues have not been presented to the federal court for deter-

72

mination and since the action in the state court does not in any manner tend to interfere with the possession of the property by the federal court, the appellants must be permitted to proceed with the prosecution of the pending action in the state court. Admittedly, a decision in the state court adverse to the bondholders would tend to impair or destroy the value of the tax sale certificates held by the clerk of the court, but it.is not such an interference with property in the custody of the court as would warrant restraint of the state court action.

The appellants also seek to have the state court determine whether the bondholders are entitled to have a levy of execution against assets of the irrigation district for the purpose of collecting the judgment entered in the federal court. In affirming the judgment of the trial court, this court held that the judgment was to be enforced in accordance with the law of Colorado. It was further observed that under the Colorado law the judgment could be collected only out of a special fund created by the levy of special assessments against the land in the irrigation district. A further judgment to the same effect in the state court would appear unnecessary but not sufficiently harmful to call for a writ of injunction.

And, finally, the appellants pray the court to enter an order declaring the rights and liabilities of the parties with reference to bonds and coupons of the irrigation district. It is entirely possible that all rights and liabilities of the parties to the state court action have not been settled by the judgment and decrees of the federal court. It is proper for the state court to determine the extent to which the rights and liabilities of the parties have been adjudicated by the application of the principles of res judicata in the same manner that it would decide any other question of law or fact arising in the case. To the extent to which appellants may attempt to relitigate issues concluded by the federal court judgment, the bondholders may assert and rely upon the defense of res judicata.

The cause is reversed and remanded with instructions to vacate the judgment.

BRATTON, Circuit Judge (dissenting).

With much said in the excellent opinion of the majority I agree, but not all of it. The judgment in the first case expressly provided that it should be enforced in accordance with the law of Colorado relating to irrigation districts which meant that it could be collected only out of funds accruing from special assessments against the land within the district. Privity existed between the irrigation district and its taxpayers, and therefore the judgment became binding upon all owners of land within the district subject to special assessment for the payment of the judgment. Atchison, T. & S. F. Ry. Co. v. Board of Commissioners, 95 Colo. 435, 37 P.2d 761.

The judgment in the action in mandamus was in the nature of an execution for the purpose of collecting the judgment in the original case for the reason that the usual process was not available. Harshman v. Knox County, 122 U.S. 306, 7 S. Ct. 1171, 30 L.Ed. 1152; City of Chanute v. Trader, 132 U.S. 210, 10 S.Ct. 67, 33 L. Ed. 345; City of Hialeah v. United States, 5 Cir., 87 F.2d 953. The money and tax sale certificates accrued as the result of that process; the court below directed that they be deposited with the clerk for the benefit of the judgment creditors; they were so deposited; and thus the court acquired jurisdiction over them.

Thereafter the suit was instituted in the state court. One of its purposes generally was to secure a judgment adjudicating that all of such tax sale certificates were null and void. Another purpose specifically was to have them adjudged null and void as to land which had been excluded from the district. In both respects the object was to interfere with and utterly destroy a res previously in the custody of the court below. The court below was vested with jurisdiction to protect such res already in its jurisdiction from interference in that manner by enjoining the parties from further prosecuting the action in the state court; Toucey v. New York Life Insurance Company, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100, 137 A.L.R. 967; and it was warranted in doing so.