**UNITED STATES of America,
Plaintiff,**

v.

**Wendell Ray PETERSON et al.,
Defendants,**

**Charles H. Bullock, Respondent-
Appellant.**

**No. 71–1654.**

United States Court of Appeals,
Tenth Circuit.

March 28, 1972.

James F. Housley, Asst. U. S. Atty., Salt Lake City, Utah (C. Nelson Day, U. S. Atty., Salt Lake City, Utah, on brief), for appellant.

John D. Russell, Salt Lake City, Utah, for defendants.

Before HILL, BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

Charles H. Bullock, Special Agent of the Federal Bureau of Narcotics and Dangerous Drugs, appeals from a criminal contempt sentence of 90 days in the county jail and a fine of $250.00 imposed by Chief Judge Willis W. Ritter on September 14, 1971. That same day this court directed Bullock's release from custody upon posting a $100.00 personal recognizance bond staying execution of the oral contempt order.

Bullock was the chief federal investigator in a criminal case filed against Lynn Uhro Hunter, charged with conspiracy under 18 U.S.C. § 371 and unlawful sale of depressant and stimulant drugs under 21 U.S.C. § 331(q) (2). On September 10, 1971, Hunter was adjudged guilty upon his voluntary guilty plea as a Young Adult Offender. Sentence was suspended and Hunter was placed on a five year probation. Specific conditions of probation are that Hunter: (1) seek and diligently pursue treatment to cure his drug addiction; (2) stay out of all trouble with the law; (3) obtain and maintain employment; and (4) meet his family responsibilities. Agent Bullock was present in the courtroom when the plea was made and when the probation order was entered.

Immediately following the court proceedings, Bullock proceeded down the hallway adjacent to the courtroom toward an elevator. As he approached Hunter and his mother in the hallway, Hunter gestured and said "hello" to Bullock with what Bullock testified to be a "smirk" on his face. At this, Bullock pointed his finger at Hunter and remarked to the effect that Hunter may have gotten "off" this time but that Bullock would "get him" again. Hunter responded to the effect that "you don't really want me, do you?" to which Bullock replied "I sure do." When Hunter remarked that Bullock must be kidding, Bullock said that he was not and that he would do anything needed to put Hunter where he had sent Hunter's friend, Olschewski, "even if it takes the city police department, and even if you run a stop sign we will get you again." The remarks between Bullock and Hunter were made after disposition of the proceedings against Hunter, out of the courtroom and not in the presence of the judge.

During oral arguments, Mr. John Russell, Hunter's attorney, informed this court that when Bullock's remarks were related to him by Hunter and his mother that he immediately reported them to Judge Ritter in his chambers. Attorney Russell did not inform either the office of the United States Attorney or Bullock that he had complained to Judge Ritter. That same day the Clerk issued a Notice at the direction of the judge in the Hunter criminal docket reading:

"Take notice that the above-captioned case has been set for further hearing at Salt Lake City, Utah, on Tuesday, September 14, 1971, at 10:00 a. m. before Honorable Willis W. Ritter on Imposition of Sentence."

Standing alone this notice could mean only that the purpose of the subsequent hearing was for imposition of sentence against Hunter. Copies were directed to Mr. Housley, Assistant United States Attorney and to Attorney Russell. No further or other notice or communication was submitted to either the office of the United States Attorney or to Bullock. By word of mouth starting from the Clerk's office, Bullock was simply informed by Housley that he was to be present for the September 14th hearing.

At the September 14th hearing, Mr. Housley, in his opening remarks, made it clear that he did not know what the pur-

pose of the hearing was until then. He said: "Your Honor, you noticed this case up for further proceedings . . . I am advised that counsel for Mr. Hunter has called some facts to the attention of the court . . . I am not just sure what they are, but I believe that I am ready to go ahead." Mr. Russell then observed that he had reported the remarks made by Bullock to the judge. He volunteered that his client "is quite upset about the matter." The judge inquired who the law enforcement officer was and whether he was present. Testimony was then taken.

Hunter testified that Bullock's remarks indicated to him that Bullock intended to "get me yet". Mrs. Hunter corroborated her son's testimony. Bullock's testimony confirmed that he had made the remarks to Hunter. He said that his remarks were not intended as criticism of the Court and that he would not have made them except for what he interpreted as a "smirk" on Hunter's face when Hunter first addressed him in the hallway. He denied any intention of harassing Hunter. The judge observed that Bullock's remarks constituted criticisms of the Court for its decision to place Hunter on probation and that Bullock had threatened to harass and make Hunter's life miserable in violation of the probation order. Mr. Housley asked the Court to consider that while Bullock's remarks were ill-advised, they should be considered in relation to another case involving narcotics sales made by one Steven Olschewski, disclosed and prosecuted by reason of Bullock's undercover work. Housley pointed out that in that case Bullock had testified that Hunter was present during the narcotics sales there involved, but that Hunter had denied this under oath. He then observed that Bullock's next encounter with Hunter was in the instant case and that Bullock's investigation had disclosed that Hunter was dealing in heroin and L.S.D. Then the judge inquired of Housley if he was prepared for the Court to enter judgment or whether he wanted some further time. Housley responded that he

did wish some further time because " . . . I am not sure exactly what we are faced with here . . . " Housley then recalled Bullock on the judge's suggestion. Bullock acknowledged that his remarks might be interpreted as criticism of the Court but that they were not so intended. Thereupon, the Court entered its oral contempt order. The Court said that Bullock's remarks were such as to "obstruct the administration of justice."

Attorney John Russell appeared and presented oral argument against the appellant, Bullock. He had not filed a brief. He stated that given a few days he would do so. *We granted him five days within which to file a brief out of time. He failed to comply and has not yet complied, long beyond the time limit.*

This case presents a clear-cut example of judicial abuse of the most basic aspects of procedural due process, i. e., reasonable notice and opportunity to prepare and be heard. Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed. 2d 113 (1971); Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). 18 U.S.C.A. § 401 authorizes a court of the United States to punish by fine or imprisonment, at its discretion, such contempt of its authority, inter alia, misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice. Fed.R.Crim.P. 42(a), 18 U.S.C.A., authorizes summary contempt proceedings only in those cases where the judge certifies that "he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court." Obviously, summary disposition is inapplicable here. Fed.R. Crim.P. 42(b) mandates that a criminal contempt other than one committed in the actual presence of the Court shall be prosecuted only on notice and hearing. The notice requirements include a statement of " . . . the essential facts constituting the criminal contempt charged and describe it as such" together with allowance of a reasonable time for the preparation of the defense.

United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925); Yates v. United States, 316 F.2d 718 (10th Cir. 1963).

■ Summary contempt proceedings are permissible only when the misbehavior is committed in the presence of the judge and is known to him personally requiring corrective steps to restore and maintain the dignity and authority of the court. Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); Harris v. United States, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965); Cooke v. United States, *supra*. Contemptuous behavior or conduct out of the presence of the judge but committed in a hallway adjoining the courtroom, [Savin, Petitioner, 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150 (1889)], or in a grand jury room near the courtroom, [Carlson v. United States, 209 F.2d 209 (1st Cir. 1954)], is "so near thereto" in a geographical connotation, [Nye v. United States, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941)], to satisfy the literal language of 18 U.S.C. § 401(3), but it is not the language of Rule 42(a) promulgated by the United States Supreme Court under the rule-making power intended to make more explicit the "prevailing usages at law" by which § 401 has authorized punishment of contempts. Sacher v. United States, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952). Criminal contempt is direct and punishable summarily without notice and opportunity to prepare only if committed in the actual presence of the judge and known to him. All other contemptuous acts are "constructive" or "indirect" contempts requiring compliance with Rule 42(b) including notice from the Court that a criminal contempt is charged, informing the accused of the nature thereof. Sacher v. United States, *supra*; Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911); United States v. Sanders, 196 F.2d 895 (10th Cir. 1952), cert. denied, Sanders v. United States, 344 U.S. 829, 73 S.Ct. 33, 97 L.Ed. 645 (1952).

■ A criminal contempt proceeding is an independent criminal action and must be conducted in accordance with the principles and rules applicable to criminal cases. In Re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948); In Re Michael, 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30 (1945); Cooke v. United States, *supra*. Contempt is a drastic remedy which should be invoked only when the right to its use is clear. It necessarily involves the element of willfulness, presenting a clear and present danger that the conduct cited will bring about a substantial interference with the orderly administration of justice. Johnson v. Mississippi, 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971); Illinois v. Allen, *supra*; Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).

Certain abuses wrought in the exercise of summary criminal contempt proceedings moved the United States Supreme Court to safeguard constitutional procedures by judicial restrictions imposed on the summary contempt power exercisable under the clauses now found in subdivisions (1) and (2) of § 401, except where instant action is necessary to restore and preserve order and to maintain the authority of the court. Johnson v. Mississippi, *supra*; Green v. United States, 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958); Pennekamp v. Florida, 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946); In Re Michael, *supra*; Bridges v. California, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941); Denver-Greeley Valley Water Users Ass'n. v. McNeil, 131 F.2d 67 (10th Cir. 1942).

■ The proceedings here clearly required compliance with the procedural mandates of Fed.R.Crim.P. 42(b). Hunter's criminal proceedings had been concluded with the Court's order of probation. Bullock's remarks were not made in the presence of the Court or in relation to a matter then being heard. The Notice given did not in anywise use the word "contempt" or even intimate that Bullock was to be tried for criminal contempt. Bullock was not afforded an opportunity to prepare or to obtain counsel

and he was not advised of the nature of the proceedings. In short, Bullock was denied fundamental procedural due process.

 Contemptuous conduct must be demonstrated beyond a reasonable doubt. Craig v. Harney, Sheriff, 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947). Applying that test, we hold that the remarks made by Bullock to Hunter, in the context of and under the circumstances evidenced by this record, do not raise to the level of obstruction to the administration of justice, or resistance or disobedience of the Court's probation order. Bullock's statements did not create a "clear and present danger" in relation to enforcement of the Court's probationary conditions imposed on Hunter. Agent Bullock did not commit any overt acts obstructive of that order.

We do not sanction the remarks made by Bullock to Hunter. They were improvident and ill-advised. Bullock so testified. Considering all of the circumstances surrounding their utterance reflected by this record, a reprimand by the Court to Bullock that he not harass or pursue Hunter in violation of the letter and the spirit of the probation order would have adequately protected the authority of the Court and would, most likely, have assured that Bullock would not obstruct the administration of the Court's probation order.

 The doctrine that the independence of the federal judiciary hangs on the power to try all criminal contempts summarily has been thoroughly rejected. "In the federal system many of the procedural protections available to criminal contemnors are set forth in Fed.Rule Crim.Proc. 42." Bloom v. Illinois, *supra*, 391 U.S. at 205, 88 S.Ct. at 1484. The transcript of the September 14th hearing contains the following remarks by Judge Ritter:

> "Now, what he is doing, he is criticizing what the court did. He is angry because the court put the boy on probation. He is criticizing what the court did . . . you stand up there and tell me (Housley) what was in his

mind, that he didn't intend any criticism of the court, when it is obvious he intends criticism of the court . . . " Tr. p. 12.

Rule 42(b) provides for disqualification of the trial judge when "the contempt charges involve disrespect to or criticism of a judge." Where, as here, the judge feels personally aggrieved by the occurrence, the contempt proceedings should be referred to another judge for public trial. Mayberry v. Pennsylvania, 400 U.S. 455 (1971).

Mr. Chief Justice Taft, speaking for a unanimous court in Cooke v. United States, *supra*, said:

> "Due process of law, therefore, in the prosecution of contempt, except of that committed in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. We think this includes the assistance of counsel, if requested, and the right to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed."

267 U.S. at 537, 45 S.Ct. at 395.

Reversed.